## S. & L. BLDG. CORPORATION v. COMMISSIONER OF INTERNAL REVENUE.

### No. 41.

Circuit Court of Appeals, Second Circuit.

July 18, 1932.

George W. Perper, of New York City (Leo H. Hoffman, Robert W. Knox, Leo Brady, and Kix Miller, Baar & Hoffman, all of New York City, of counsel), for appellant.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key, Whitney North Seymour, and Andrew Daniel Sharpe, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and F. R. Shearer, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

The appeal involves the application of section 212 (d) of the Revenue Act of 1926 (26 USCA § 953 (d), which, although the transactions at bar happened in 1924 and 1925, section 1208 of the act (26 USCA § 953a) made retroactive. It was designed to allow a taxpayer in the case of installment sales to spread the profit over the whole period during which payments were made, so as to avoid loading all of it upon those years which followed the amortization of the original cost. It gave a privilege; "the income *may* * * * be returned on the basis and in the manner above prescribed."

The petitioner had two parcels of realty in New York, each bought after March 1, 1913. It sold one in 1924; the other in 1925. It had previously placed one mortgage upon the first parcel; two, upon the second. Each buyer paid a sum down, executed a purchase-money mortgage and assumed the payment of the existing mortgages. The petitioner chose to treat the sales as falling within section 212 (d), and the Commissioner agreed; they differed as to how the tax should be calculated. Both found the profit by subtracting the depreciated cost, the "base," from the sum of the cash to be paid and the face of all the mortgages. The petitioner returned in both years that part of the profit calculated as follows: It added together the cash actually paid and all payments made on any of the mortgages; this sum it considered "installment payments actually received in that year." It applied to this amount a fraction of which the profit was the numerator, and the denominator was the sum of the cash to be paid and the face of all the mortgages. The Commissioner took as the "installment payments actually received," the cash paid in any year and all payments made upon the purchase-money mortgage; he excluded payments on the mortgages assumed. For the numerator of the fraction, like the petitioner he took the profit; but for the denominator he took the sum of the cash to be paid and the face of the purchase-money mortgage, excluding those assumed. In so doing he followed his regulation, made by virtue of the power given him by section 212 (d); Regulations 69, article 44. Thus the differences between the parties arise first as to what should be considered the "installment payments actually received in that year," and second, as to what was "the total contract price." In general, the difference is whether the assumed mortgages shall be included in both factors.

 The regulation in refusing to allow the payment of the assumed mortgages as "installments actually received," apparently considered the money borrowed as the seller's re-

720

imbursement pro tanto of the "base." The discharge of the loan is not therefore a receipt on the purchase-price; money paid to his use is not "received" by him. No one can deny that this is the more natural sense to impose upon the phrase; a man does not "actually receive" what is paid to another. Yet in cases where the assumed mortgages exceed the "base," the regulation charges the seller with the whole excess at once. The sale at bar in 1925 was such a case. The regulation is inconsistent in these dispositions. If, when the assumed mortgages do not exceed the "base," payments are not "received" by the taxpayer, he can "receive" none, when they do. Indeed, the regulation goes even further; it makes the mere assumption an "installment actually received." No doubt, the excess must at some time be counted as profit; and it cannot be returned as of the time the money was borrowed, for the transaction is not then closed. There appears to be no intelligible way of dealing with it but to hold that the profit is received when the installments are paid. But if so, the same must be true when there is no excess.

Again, the regulation involves an equivocal use of the phrase, "total contract price." Obviously the denominator of the fraction to be applied to each "installment actually received," must be the sum of all such installments. If it be larger, the whole profit will never be covered. For this reason the regulation, which does not include among installments payments upon the assumed mortgages, excludes their face from the denominator. Yet in calculating the profit it necessarily includes the mortgages in the minuend, else there would ordinarily never be any profit. But the section, which necessarily implies that profit shall be reckoned by using a price which includes all the mortgages, cannot mean something else when speaking of the denominator of the fraction. In defining the condition upon the privilege in the case of realty it uses the phrase, "purchase price," but that has nothing to do with the question here; it touches, not the calculation of the income to be returned, but the right to spread the profit at all. Nevertheless, it is extremely improbable that it means anything else than "total contract price," and the Commissioner here agrees that it includes assumed mortgages.

█ Thus it is apparent that no theory can be consistently applied which does no violence to the text; the fact is that the section was drawn without this situation in mind. It followed the lines of earlier regulations beginning with 1916, none of which had themselves dealt with the case of assumed mortgages. We of course agree that in such a situation the powers of the Commissioner must be given wide latitude, especially perhaps, because the very section contains an express grant. But though he may impose any reasonable interpretation upon the language, and we should accept it, even though we independently thought otherwise, his gloss must be consistent; he may not read the same words in one sense in one connection and differently in another. We can see no escape from treating the phrase, "installments actually received," as including payments made to the seller's use. Nor does this do great violence to the words. Though the seller has already received the money, he must repay it. The funds are his, to be sure; he may use them; but he is bound for their equivalent and it is not merely a figure of speech to regard his final quittance as that which assures their receipt. True, this may result in imposing a tax after direct payments have ended, and that would be unfair, if it was compulsory; but it is not, for the section merely gives an option, and the taxpayer may not object to what he can avoid.

We cannot see that Lucas v. Schneider, 47 F.(2d) 1006 (C. C. A. 6), has any bearing on the situation here. The ruling would indeed deprive the petitioner of any recourse to the section at all, which the Commissioner does not assert. As applied to the sale in 1925, it would also require us to treat the excess of the assumed mortgages over the "base" as "property" received at once. But we could scarcely stop there; we should be obliged to treat the whole of the assumed mortgages in the same way, and that would suit neither party. In any case Judge Denison seems to us to have been right in saying that the assumption of a mortgage is not "property" but "evidence of indebtedness." However that may be, we need here only decide whether the regulation is a correct interpretation of the statute as to the calculation of the return. We think that it is not, and that the petitioner is right in its insistence that payments reducing the assumed mortgages are to be included among "installments actually received." The rest follows.

Order reversed; cause remanded for further proceedings in accordance with the foregoing.