## WOLAN et al. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 4063.

United States Court of Appeals
Tenth Circuit.

Aug. 3, 1950.

Rehearing Denied Aug. 30, 1950.

Before PHILLIPS, Chief Judge, and MURRAH and PICKETT, Circuit Judges.

PHILLIPS, Chief Judge.

This is a petition to review a decision of the Tax Court and involves deficiencies in income and declared excess profits taxes of Seven Fifteen South Normandie, Inc.,[1] a dissolved Colorado corporation, for the fiscal year ending September 30, 1944.

The taxpayer owned an apartment house, known as the Langham Apartments, located in Los Angeles, California. On October 30, 1936, it leased the apartment house for a term of 20 years to Sevenorm Corporation,[2] which was a California corporation. Sevenorm paid the taxpayer $35,000 as advance rental under the lease and the taxpayer reported that amount as income in its return for 1937. Sevenorm capitalized the $35,000 rental payment and other lease expenses on its books to be amortized over the lease term. At the time of the execution of the lease, the taxpayer owned no stock in Sevenorm. In 1939, the taxpayer acquired all the capital stock of Sevenorm for $21,000. Thereafter, in November of that year, Sevenorm was completely liquidated and all its assets were distributed to the taxpayer. At that time, the unamortized balance of the lease expenses on the books of Sevenorm was $32,727.65. Under § 112(b)(6) of the Internal Revenue Code, 26 U.S.C.A., the liquidation of Sevenorm resulted in no gain or loss, that is, it was a tax-free liquidation. Hence, the assets acquired by the taxpayer on the liquidation of Sevenorm had the same basis for income tax purposes in taxpayer's hands as they had in the hands of Sevenorm. Thereafter, the taxpayer, to and including its fiscal year ending September 30, 1943, claimed and was allowed an annual deduction for amortization of the lease expenses of $1,934.52, which was the same amount Sevenorm had claimed and been allowed annually. At the beginning of the taxpayer's fiscal year ending September 30, 1944, there remained an unamortized balance of the lease expenses of $25,311.99. The taxpayer was completely liquidated and dissolved on September 30, 1944, and

William L. Branch, Denver, Colo. (R. A. Lauterbach, Denver, Colo., on the brief), for petitioners.

L. W. Post, Atty., Tax Division, Dept. of Justice, Washington, D. C. (Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack and Carlton Fox, Sp. Asst. to the Atty. Gen., on the brief), for respondent.

1. Hereinafter called the taxpayer.

2. Hereinafter called Sevenorm.

all its assets were distributed to its stockholders. The liquidation of the taxpayer resulted in gain or loss to its stockholders, but not to the taxpayer.

In 1941, the taxpayer leased the apartment house to a third party for a term of 15 years. That lease is referred to in the record as the Wallach lease. The cost to the taxpayer of this lease, consisting of broker's commissions and other expenses, was capitalized on its books and amortized over the life of the lease at the rate of $443.88 per year, and taxpayer made deductions therefor in its income tax returns to and including its fiscal year ending September 30, 1943. At the time of the liquidation of taxpayer, the unamortized balance of the Wallach lease expenses was $5,623.36.

In its income tax return for the year ending September 30, 1944, the taxpayer claimed a deduction of $25,311.99, the unamortized balance of the Sevenorm lease expenses, and $5,623.36, the unamortized balance of the Wallach lease expenses. The Commissioner allowed $1,934.52 on account of the Sevenorm lease and $443.88 on account of the Wallach lease and denied the balance of the claimed deductions.

The state fiscal year in California begins July first of each year. At all times here material, property taxes in California were assessed and became a lien and a personal liability of the owner on the first Monday of March. Such taxes were imposed for the 12-month period beginning the following July first. Since the taxpayer had a fiscal year ending September 30, such property taxes assessed in March of each year and imposed for the state's ensuing fiscal year, covered the last three months, July, August, and September, of the taxpayer's current fiscal year and the first nine months of the taxpayer's succeeding fiscal year. The taxpayer was on the accrual basis and it followed the accounting method, beginning in 1939,[3] of accruing the taxes on the apartment house on a monthly basis over the period for which the taxes were imposed. Thus, in each of its fiscal years beginning with 1939-1940, the taxpayer accrued and deducted 9/12ths of the annual tax which was imposed for the period embracing the first nine months of its fiscal year, although the assessment and lien date fell in its preceding fiscal year, and 3/12ths of the annual tax imposed for the period embracing the last three months of its fiscal year, the assessment and lien date of which fell within that fiscal year. Consistent with this accounting method, the taxpayer accrued on its books and deducted in its return for its fiscal year ending September 30, 1944, 9/12ths, being $10,690.59, of the property tax which was assessed and became a lien in March, 1943, for the state's tax year beginning July 1, 1943, and 3/12ths, being $3,641.08, of the property tax which was assessed and became a lien in March, 1944, for the state's tax year beginning July 1, 1944. The remaining 9/12ths, or $10,923.26, of the tax which was assessed and became a lien in March, 1944, for the state's tax year beginning July 1, 1944, was not claimed as a deduction in the 1944 return, but was subsequently claimed and allowed by the Commissioner in lieu of the 9/12ths, or $10,690.59, claimed in the return. As a result, the Commissioner allowed a deduction of $14,564.34, or $232.67 more than the taxpayer claimed in its return.

The Tax Court sustained the determination of the Commissioner with respect to the deductions for the lease expenses of the Sevenorm and Wallach leases, respectively. With respect to the deduction for property tax payments, the Tax Court held that the taxpayer was entitled to the deduction claimed in its return in accordance with the method of accounting which it had consistently used. It further held that the taxpayer was not entitled to deduct the 9/12ths of the tax assessed in March, 1944, for the period of nine months following its fiscal year ending September 30, 1944. Although the deduction allowed by the Commissioner was $232.67 in excess of what the Tax Court held to be properly allowable, the Tax Court did not increase the deficiencies for the stated reason that no motion for such increase had been made by the Commissioner.

3. Sevenorm had paid the taxes for prior years.

■ Under settled law the advance rentals paid and lease acquisition costs incurred by Sevenorm had the character of capital investments and were required to be capitalized by Sevenorm and amortized over the term of the lease.[4] The acquisition by the taxpayer, on the liquidation of Sevenorm, of the lease as an asset did not change the situation with respect to the unamortized balance of the lease expenses paid by Sevenorm. Both parties concede that for the purpose of amortizing the balance of the lease expenses by the taxpayer, the continued existence of the lease for that purpose, although fictional, was properly recognized.

However, the taxpayer contends that upon its dissolution and liquidation, such fictional existence terminated and it thereupon lost or abandoned the unamortized balance of $32,727.65 and was entitled to deduct that amount in its return for the year ending September 30, 1944. It makes a like contention with respect to the unamortized balance of $5,623.36 of the lease expenses of the Wallach lease.

■ The government asserts that all of the assets of the taxpayer, including the right to have the existence of the Sevenorm lease continued fictionally until the end of its term, for the purpose of deducting at the rate of $1,934.52 annually the unamortized portion of the lease expenses remaining when the taxpayer acquired the assets of Sevenorm, passed to the stockholders on the liquidation of taxpayer. We agree. We see no reason why such fictional existence of the lease should not continue to be recognized after the assets passed to the stockholders of the taxpayer. That would result in permitting the stockholders to continue to deduct annually the unamortized portion

of such lease expenses at the annual rate of $1,934.52. Counsel for the Commissioner so conceded at the oral argument. To so hold would be consistent with the well-settled principle that advance rental paid and lease expense incurred by a lessee are capital investments to be amortized over the term of the lease and that such right continues, although during the term of the lease the lessor acquires the leasehold estate from the lessee. We see no reason why the principle should not be extended to the successor in interest of the lessor.

Malta Temple Ass'n v. Commissioner, 16 B.T.A. 408, 409, is clearly distinguishable. That case involved an organization expense incurred by a corporate taxpayer in connection with the obtaining of its charter. Upon dissolution, it surrendered its charter. Of course, when the charter was surrendered, it did not pass to the corporation's successors. It was abandoned and lost and was properly deductible under § 234(a)(4) of the Revenue Act of 1924, 26 U.S.C.A. Int.Rev. Act, pages 39, 40.

■ Expenses incurred by the lessor in negotiating a long-term lease must be amortized over the term of the lease and deducted pro rata annually.[5]

What we have said with respect to the Sevenorm lease applies equally to the Wallach lease. Clearly, the economic interest in that lease passed to the stockholders of the taxpayer on its liquidation. It was an income-producing asset.[6] It follows, also, that the stockholders may deduct annually over the remainder of the term of the lease after September 30, 1939, at the rate of $443.88 per year, the unamortized remainder of the lease expense of the Wallach lease.

4. Main & McKinney Co. v. Commissioner, 5 Cir., 113 F.2d 81; Southwestern Hotel Co. v. United States, 5 Cir., 115 F.2d 686, 688; King Amusement Co. v. Commissioner, 6 Cir., 44 F.2d 709, 710; Baton Coal Co. v. Commissioner, 3 Cir., 51 F.2d 469, 470; Mertens, Law of Federal Income Taxation, Vol. 2, §§ 12.30, 12.31.

5. Helvering v. Manhattan Life Ins. Co., 2 Cir., 71 F.2d 292, 293; Griffiths v.

Commissioner, 7 Cir., 70 F.2d 946, 947; Young v. Commissioner, 9 Cir., 59 F.2d 691, 693; Spinks Realty Co. v. Burnet, 61 App.D.C. 321, 62 F.2d 860, 862; Tonningsen v. Commissioner, 9 Cir., 61 F.2d 199; Bonwit Teller & Co. v. Commissioner, 2 Cir., 53 F.2d 381, 384, 82 A.L.R. 325.

6. See Plaza Investment Co. v. Commissioner, 5 T.C. 1295, 1297.

Longview Hilton Hotel Co. v. Commissioner, 9 T. C. 180, is distinguishable. The petitioner there, a corporation, obtained a loan secured by a mortgage on its hotel property. For services in securing the loan, it paid broker's fees. It amortized those fees over the life of the loan and in its returns for the fiscal years 1941, 1942, and 1943, took pro rata deductions. At the close of its fiscal year 1944, petitioner was dissolved and its assets were distributed in kind to its then stockholders, who assumed the liability for the unpaid portion of the mortgage loan. There, what passed to the stockholders was a liability, not an income-producing asset, and it formed no part of the cost basis of the property distributed to the stockholders. On the assumption of the loan by the stockholders, the corporation was in the same position as if it had paid off the loan during that year and was, therefore, entitled to deduct the balance of the unamortized loan expense. For the same reasons, S. & L. Building Corporation v. Commissioner, 19 B. T. A. 788, is distinguishable.

Under the holding of the Supreme Court in Magruder v. Supplee, 316 U. S. 394, 396-399, 62 S.Ct. 1162, 86 L.Ed. 1555, the determination of the Commissioner with respect to the deduction for taxes was correct.[7] But, in Commissioner v. Schock, Gusmer & Co., 3 Cir., 137 F.2d 750, the court held that for income tax purposes, property taxes may be accrued on a monthly basis during the year in which they are payable and that where the taxpayer consistently accrues such taxes on that basis on his books, he may make a deduction accordingly.[8] Regardless of which method of computing the deductions was proper, it is clear that the taxpayer was not entitled to 9/12-ths, being $10,690.59, of the property tax which was assessed and became a lien in March, 1943, and also the 9/12ths, or $10,-923.26, of the property tax which was assessed and became a lien in March, 1944. If the Commissioner's determination was correct, the taxpayer received the benefit of it under the decision of the Tax Court which did not increase the deficiencies determined. If the holding of the Tax Court as to the proper method of computing the deduction for taxes was correct, again the taxpayer was not injured because he received the benefit of a greater deduction than he was entitled to under that method.

Accordingly, the decision of the Tax Court is affirmed.

---

7. See, also, United States v. Anderson, 269 U.S. 422, 441, 46 S.Ct. 131, 70 L. Ed. 347.

8. See, also, Citizens Hotel Co. v. Commissioner, 5 Cir., 127 F.2d 229, 230.