ANOVER REALTY CORP., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 65810.   Filed January 13, 1960.

*Norman B. Sobler, Esq.*, for the petitioner.
*Jules W. Breslow, Esq.*, for the respondent.

### OPINION.

MULRONEY, *Judge:* Respondent determined deficiencies in petitioner's income tax of $3,007.31 for the fiscal year ended November 30, 1952, and of $1,416 for the fiscal year ended November 30, 1953. Because of certain concessions by the parties, none of the deficiency for fiscal 1953 remains in issue.

The question for decision is whether petitioner, the transferee of mortgaged realty, is entitled to amortize and deduct a pro rata share of the remaining unamortized portion of mortgage discount and expenses incurred by its predecessor corporation.

All of the facts have been stipulated and they are found accordingly.

Anover Realty Corp., the petitioner (hereinafter sometimes referred to as Anover) was organized under the laws of New York on August 30, 1951. It filed its income tax return on an accrual basis for its fiscal year ending November 30 with the district director of internal revenue in Albany, New York.

Condyck Realty Corporation (hereinafter sometimes called Condyck), an accrual basis taxpayer, was organized under the laws of New York on June 12, 1951. On June 15, 1951, Condyck purchased from Ferris Holding Corporation (hereinafter sometimes called Ferris) several pieces of realty located in Brooklyn. The total purchase price was $615,000. Of this amount $437,007.50 was raised by Condyck by executing three mortgages and mortgage notes, each of a term of about 1 year, dated, executed and delivered on June 15, 1951, the date of title closing.

Each of the three notes was issued at a discount, i.e., the face amount of the notes was in excess of the amount of money actually received by Condyck. The first and second mortgage notes in the face amount of $330,000 and $112,500, respectively, were payable to Lulu E. Jackson and required relatively small monthly payments in addition to interest, at 5 per cent and 6 per cent, respectively, with the balance due and payable at the date of maturity. The third mortgage note in the face amount of $37,000, with interest at 5 per cent, was payable to Ferris and also required small monthly payments in addition to interest, with the balance due at maturity.

In summary, the purchase price was paid as follows:

| | |
|---|---:|
| Purchase price | $615,000.00 |
| Less: closing adjustments | 2,273.89 |
| | $612,726.11 |
| | |
| Paid in cash by Condyck to Ferris | $718.61 |
| Paid by Condyck's stockholders to Ferris for the account of Condyck | 175,000.00 |
| Proceeds of mortgage loans paid by Lulu E. Jackson (mortgagee) to Ferris for the account of Condyck: | |
| From proceeds of first mortgage loan | 302,850.00 |
| From proceeds of second mortgage loan | 99,562.50 |
| Credit from proceeds of third mortgage loan from Ferris (mortgagee) to Condyck | 34,595.00 |
| | $612,726.11 |

In addition to the mortgage bonuses or discounts, which totaled $36,230, Condyck incurred certain miscellaneous mortgage expenses, including legal fees, mortgage recording taxes, title insurance, and brokerage commissions in the amount of $7,220.50. The total of the discount and the mortgage expenses was $43,450.50. This amount was set up as an "asset" on Condyck's books. Condyck proceeded to amortize said amount over the term of the loans and deducted on its income tax return a pro rata share of the amount allocable to the period from June to December of 1951.

In summary, the mortgage discounts and expenses were as follows:

Discount or bonus:
| | | |
|---|---:|---:|
| First mortgage | $21,450.00 | |
| Second mortgage | 12,375.00 | |
| Third mortgage | 2,405.00 | $36,230.00 |
| | | |
| Legal fee to mortgagee's attorney | 750.00 | |
| Brokerage commission | 3,300.00 | |
| Mortgage recording taxes | 2,212.50 | |
| Insurance and other miscellaneous mortgage expenses | 958.00 | 7,220.50 |
| | | |
| Total mortgage discount and expenses | | 43,450.50 |

On December 15, 1951, Condyck transferred all of its assets, subject to its liabilities, to its two stockholders pursuant to a 1-month liquidation under section 112(b)(7) of the Internal Revenue Code of 1939.[1] Four days later said stockholders, pursuant to section 112(b)(5), transferred all the said assets subject to the liabilities, in a tax-free transaction, to three new corporations, taking back all the shares of stock of the said corporations. Petitioner was one of these three corporations. The other two were Brunt Realty Corp., a petitioner in this Court on similar issues, and Vanfer Realty Corporation.

A certificate of dissolution of Condyck was filed in the appropriate State office December 28, 1951.

At the time of transfer from the stockholders petitioner entered on its books its share of the assets received by the stockholders from Condyck, including a pro rata share of the unamortized portion of the discount amounting to $11,281.81 and other mortgage expense amounting to $2,482.57 (in total, $13,764.38), and a pro rata share of the liabilities to which said assets were subject. Petitioner proceeded to amortize the balance of the mortgage discount and expense over the remaining life of the loans and duly paid the agreed amounts at maturity. No part of the unamortized mortgage discount or expense so treated by petitioner had been deducted by Condyck on its income tax return.

In its income tax return for its fiscal year ended November 30, 1952, petitioner claimed a deduction of the $13,764.38 mortgage discount and expense. Respondent disallowed the deduction of the said amount and the deficiency in question is based on this disallowance.

The third mortgage bonus or discount was waived in its entirety by the third mortgage holder at maturity and on the basis of this, petitioner reported $2,405 as income in its return for the fiscal year ending November 30, 1952. The parties agree that if, in this Court's opinion, the respondent should prevail and the deduction claimed by

---

[1] All section references are to the Internal Revenue Code of 1939, as amended.

petitioner be disallowed, then in the computation of deficiency following from this Court's opinion, the said $2,405 should be deducted from the taxable income reported by petitioner for said year.

The question thus presented is whether petitioner as subsequent transferee of the mortgaged premises, subject to the mortgage debt, is entitled to amortize and deduct a pro rata share of the remaining unamortized portion of mortgage discount and expenses incurred by Condyck, its predecessor corporation.

Both parties agree it was proper for Condyck to amortize the mortgage discounts and the expenses it incurred in securing the mortgage loans, over the life of the loans. *Julia Stow Lovejoy*, 18 B.T.A. 1179; *S. & L. Building Corporation*, 19 B.T.A. 788, reversed on another ground 60 F. 2d 719, revd. 288 U.S. 406; *Metropolitan Properties Corporation*, 24 B.T.A. 220; *Longview Hilton Hotel Co.*, 9 T.C. 180.

We have held the borrower can deduct the remaining unamortized balance of mortgage discounts and expenses in the year the borrower sells the property (*S. & L. Building Corporation, supra*) or the year the borrower is dissolved (*Longview Hilton Hotel Co., supra*).

Petitioner recognizes the last two cited cases are some authority against its contention that it succeeds to the unamortized balance of the mortgage discounts and expenses incurred by Condyck, but petitioner seeks to distinguish said cases on the ground that here the discounts and expenses were, as petitioner states on brief, "incurred solely for the purpose of, and contemporaneously with, acquisition of an income producing asset, real property." Petitioner points out that in *Longview Hilton Hotel Co.* and *S. & L. Building Corporation*, the mortgage loans were on realty already owned by the borrowing corporations and not on property acquired with the proceeds of the mortgage loans.

The distinction noted is immaterial to the issue of whether a borrower's balance of unamortized mortgage discounts and expenses passes to the transferee of the mortgaged assets. This becomes apparent when we examine the reason why such an expenditure for mortgage discounts and expenses must be amortized over the period of the loan in the first place. It is because such an expenditure is an expenditure made for the purpose of securing the use of money, throughout the loan period, as the basis for deriving income. *Julia Stow Lovejoy, supra*. In the cited case, we pointed out a taxpayer would not be permitted to deduct a "disbursement for a substantial asset, such as machinery, the effect of which is to be felt in the business of future years." There we held the loan expenses for securing a $175,000 mortgage loan to finance the building of a ware-

house on the mortgaged premises, which was expected to produce rent income, had to be apportioned over the length of the loan, the opinion saying: "The result of this disbursement was that petitioner had for ten or fifteen years the use of another's money as the basis of deriving income."

The expenditure is not for the purpose of securing an asset, even though the proceeds of the loan might be used for that purpose. We pointed that out in *S. & L. Building Corporation, supra,* where one of the purposes of the loan was to purchase property. There we said:

Mortgage fees paid to secure loans such as those involved in this proceeding do not represent cost of property, but represent cost of the use of money borrowed. * * * Under such circumstances we think it would be altogether improper to say that the mortgage fees paid to secure such loans represented a part of the cost of the property mortgaged.

It is not the purpose for which the loan is made that is important. It is the purpose of the expenditure for loan discounts and expenses. That purpose is to obtain financing or the use of money over a fixed period extending beyond the year of borrowing. When we analyze the reason behind the rule of amortizing such debt expenses, the distinction between this case and *S. & L. Building Corporation* and *Longview Hilton Hotel Co.* vanishes. Here, as in the cited cases, the mortgage discounts and expenses represent the cost of money borrowed for a period extending beyond the year of borrowing. It matters not that the proceeds of the loans be used to build an income-producing warehouse as in *Julia Stow Lovejoy,* or "to purchase additional properties" as in *S. & L. Building Corporation* or to buy the mortgaged premises, as in the instant case. In all such cases the expenditure represents an expenditure for the cost of the use of money and not a capital expenditure for the cost of any asset obtained by the use of the proceeds of the money borrowed.

Amortization of the loan expense is related to the life of the loan and not the life of any asset obtained by use of the loan proceeds. The transfer of the asset obtained by use of the loan proceeds does not mean the transferee succeeds to the unamortized balance of the loan discounts and expenses. If the debt is assumed by the transferee it merely marks an earlier end to the period for which the borrower had the use of the money, which means the borrower, who has been amortizing the debt discounts and expenses he incurred or paid, and not the transferee, can take the unamortized balance as a deduction in the year of transfer. This is the force of our holding in *S. & L. Building Corporation,* where we said: "He [borrower], having shifted the burden of his mortgage to other shoulders [the purchaser of the mortgaged premises who assumed the mortgage], stands in the same situation as if he had paid it off

and therefore should be allowed to deduct the remaining portion of his unamortized mortgage fees." To the same effect is *Longview Hilton Hotel Co.*, where the mortgaged property was transferred by the borrower in liquidation. There we said: "The only significance of the dissolution and liquidation is that it marked the close of the period during which petitioner had the use of the borrowed money."

We hold for respondent, no part of the balance of the unamortized mortgage discounts and expenses were deductible by petitioner. The cases cited by petitioner such as *Plaza Investment Co.*, 5 T.C. 1295, and *Wolan v. Commissioner*, 184 F. 2d 101, affirming a Memorandum Opinion of this Court, do not involve the deductibility of debt discounts or expenses. They involve the deductibility of unamortized balances of expenses for procuring leases, which were held not available to the taxpayers after their interest in the leases expired when they were dissolved. The cited opinions distinguish the cases of *S. & L. Building Corporation*, *supra*, and *Longview Hilton Hotel Co.*, *supra*, and point out the cases are not analogous, for in the lease cases the lease expenses do form a part of the cost basis of the lease, while expenditures in connection with the creation of a liability form no part of the cost basis of property that is transferred.

Petitioner makes an alternative argument based upon paragraph 14 of the stipulation, which is as follows:

The parties further agree that if all or any part of the said $13,764.38 * * * deducted by Petitioner and disallowed by Respondent, shall remain disallowed under the opinion of this Court, a second issue arises. This issue is whether the amount remaining disallowed shall be added to the cost basis of the realty acquired by Condyck, or whether said amount shall be deducted by Condyck upon its liquidation and dissolution.

The issue of whether the amount of mortgage discounts and expenses remaining unamortized should "be deducted by Condyck upon its liquidation and dissolution" cannot be decided here. We found it necessary in discussing the main issue above, to make mention of the respective rights of the borrower and its transferee, in such transactions, but Condyck's income tax problems are not before us and jurisdiction to determine what would or would not be deductible by Condyck cannot be conferred by stipulation.

The issue that the disallowed balance should be added to the cost basis of the realty acquired by Condyck, is not raised by the pleadings. Moreover, it is perfectly apparent a decision of this issue would have no bearing on this case. The only reason for determining petitioner's basis in the property would be to decide the amount of depreciation allowable to petitioner. In this fully stipulated case the record does not disclose facts necessary to determine peti-

tioner's basis, nor the amount of any depreciation, if any, claimed by or allowed petitioner.

Petitioner makes another alternative argument based upon the statement, frequently made in opinions, that the mortgage discount is actually interest. See *L-R Heat Treating Co.*, 28 T.C. 894, and cases there cited. Petitioner's argument seems to be under section 23(b) granting a deduction for "all interest paid or accrued." The answer to this argument is contained in our earlier holding to the effect that the right to continue to amortize the debt deduction does not pass to petitioner. Whatever the debt deduction is called, it was neither paid nor accruable by petitioner.

*Decision will be entered under Rule 50.*

