EDWARD HARRIS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Harris v. Commissioner
Docket No. 4113-69
United States Tax Court
T.C. Memo 1975-125; 1975 Tax Ct. Memo LEXIS 251; 34 T.C.M. (CCH) 597; T.C.M. (RIA) 750125; May 5, 1975, Filed Edward Harris, pro se. Hector C. Perez, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: The respondent determined a deficiency in petitioner's federal income tax for the taxable year 1967 in the amount of $1,571.16. The issue in controversy is the proper calculation of the gain or loss arising from a foreclosure sale of an apartment house in which petitioner had a one-half interest. Petitioner also claims that he has a net operating loss carryover available for the year in issue. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, are incorporated by this reference. Edward Harris (hereinafter petitioner) is an individual residing in Van Nuys, California at the time of the filing of his petition herein. Petitioner filed his income tax return *253 with the district director of internal revenue at Los Angeles, California. Sometime prior to 1963 petitioner and his brother, Lawrence Harris (hereinafter Lawrence), formed a joint venture to purchase properties, construct buildings thereon, and sell them. Each was entitled to share in the profits or losses to the extent of 50 percent. During 1963 or 1964 they acquired property at 14335 Burbank Boulevard in Van Nuys, California (hereinafter the Burbank property) and built a 20-unit apartment building on it in 1964. The cost of the land was $41,000. To finance the purchase price of the land petitioner borrowed $14,815.95 from the San Fernando Valley Federal Savings and Loan Association, and $25,000 from an individual named Moore (hereinafter the Moore loan). The former loan was repaid in March, 1963. The latter loan was secured by a third trust deed on the Burbank property. The construction project was financed by two additional loans. In October, 1963 petitioner borrowed $180,000 from the Allstate Savings and Loan Association (hereinafter the Allstate loan) which was secured by a first deed of trust. In April, 1964 an $1,800 loan commission fee was paid by Lawrence to Copp Investment *254 Co. in connection with the Allstate loan. In May, 1965 petitioner borrowed $12,500 from Peter and Athena Voorlas (hereinafter the Voorlas loan) which was secured by a second deed of trust. The funds generated by the Voorlas loan were used to make payments on the Allstate loan. The petitioner in the instant case was previously the petitioner in a prior case before this Court in which his federal income tax liability for the years 1964, 1965, and 1966 were determined under Rule 50 (now Rule 155) computations pursuant to the Rules of Practice and Procedure of this Court. Harris v. Commissioner, 73-1 U.S.T.C. par. 9205 (9th Cir. 1972), affirming per curiam a Memorandum Opinion of this Court, cert. denied 410 U.S. 966 (1973). These computations show that the Burbank property operated at a loss in 1965 and 1966. Included in these losses were deductions for depreciation of $4,050 for 1965 and 1966 and for interest of $16,456.72 and $10,468.54 for 1965 and 1966 respectively, of which petitioner was entitled to his appropriate share. These calculations also show that petitioner had a net operating loss carryover during this period and that it was fully utilized *255 in 1966. Petitioner made his last payment on the Allstate loan in September, 1966. At this time the outstanding principal balance on the loan was $172,141.42. [1] To protect their interest in the Burbank property, the Voorlases began to make the principal and interest payments due on the Allstate loan directly to Allstate. Although no formal indicia of a loan were created, petitioner considered these payments to be additional loans by the Voorlases to him. The Voorlases made their first payment in February, 1967 and made 11 payments in all (including payments in arrears) totaling $13,860 of which $3,540.81 and $10,319.19 was allocated to principal and interest, respectively. [2] The loan payment schedule also reflects other payments, totaling $3,820.19, which breaks down to $2,600.34 for taxes including penalties, $332.25 for trustee fees, and $887.60 for attorney's fees. These payments were made in February, 1967 when the Allstate loan was made current. [3]
*256 In July, 1967 the Voorlases foreclosed on the Burbank property. Their bid was $26,550 plus the assumption of the Allstate loan. At the time of the foreclosure the outstanding principal balances on the Allstate loan, the Voorlas loan, and the Moore loan were $168,601, $11,708, [4] and $17,045, respectively. Petitioner, on his 1967 tax return, calculated his share of the loss on the foreclosure of the Burbank property to be $8,053. In addition he included $1,000 of transportation expenses incurred during the construction of the building during the period 1962 through 1964, making the total loss $9,053. In his brief petitioner altered his calculations and arrived at an $8,885 foreclosure loss and still claims to be entitled to include the $1,000 transportation expense in his total loss. Respondent in his brief concedes that petitioner is entitled to a foreclosure loss of $2,711 and contests the addition of the transportation expenses. [5]
*257 In his statutory notice of deficiency respondent disallowed petitioner's claimed foreclosure loss as follows: You claimed a loss of $9,053.00 as a foreclosure loss which is not allowed because you did not establish that you are entitled to such loss under the provisions of the Internal Revenue Code. OPINION The case at bar requires us to determine the proper calculation of the gain or loss arising from the foreclosure sale of the Burbank property in which petitioner had a one-half interest and whether petitioner has a net operating loss carryover from which he can benefit in 1967, the taxable year in issue. It is well settled that the event of foreclosure is a "sale" precipitating the recognition of the gain or loss realized on the event. Helvering v. Hammel,311 U.S. 504 (1941). The ultimate determination of the amount of gain or loss to be recognized must be made by comparing the amount realized with the adjusted basis of the property involved. Section 1001(a) Internal Revenue Code of 1954. [6] Both petitioner and respondent have submitted their own calculation of the net result of this transaction (as noted in our Findings of Fact) *258 and arrived at different conclusions. However, upon review of these calculations and the evidence in the record on which they are based, we believe that neither is entirely correct. Our first area of disagreement is with the amount of depreciation used in arriving at the adjusted basis of the Burbank property. Petitioner's figure of $4,050 apparently reflects one-half of the total depreciation allowed on the Burbank property by this Court in his previous case--$4,050 depreciation allowed in 1965 and 1966, respectively. Edward Harris,T.C. Memo. 1970-331. On his 1967 tax return petitioner also claimed depreciation on the Burbank property for one-fourth of the year of $1,012.50 and deducted it separately from his foreclosure loss. [7] He neglected, however, to include this amount in his depreciation figure when he calculated his foreclosure loss. Section 1016(a)(2). *259 Respondent's figure of $18,224 (of which 50 percent or $9,112 was allocated to petitioner) does reflect the depreciation taken in 1967, but his figure is too high. [8] As noted above this Court previously determined that the total annual depreciation figure for the Burbank property should be $4,050 (of which 50 percent was allocated to petitioner), and used that figure in determining petitioner's taxable income for 1965 and 1966. We believe then that the proper depreciation figure to be used in the calculation of petitioner's gain or loss on the foreclosure of the Burbank property should be $5,062.50. This represents depreciation of $4,050 allowed to petitioner by this Court for 1965 and 1966, plus depreciation of $1,012.50 allowed to petitioner by the respondent for 1967. Our second *260 area of disagreement involves the amount realized by petitioner with respect to the debts owed to the Voorlases that were cancelled as a result of the foreclosure. We believe that neither petitioner's nor respondent's figure of $26,550 or $11,708, respectively, accurately reflects their financial relationship. [9]
Petitioner made his last payment on the Allstate loan in September, 1966, thereby giving Allstate the right to foreclose on the Burbank property. Cal. Civ. Pro. Sec. 725a et. seq. (West 1955). Such an action by Allstate would effectively eliminate the Voorlases' interest in the Burbank property. Cal. Civ. Pro. Sec. 580b (West 1955). However, under California law the Voorlases (as the holders of the second deed of trust) had the right to cure the debtor's default and protect their interest by making the necessary payments to the holder of the first deed of trust (Allstate). Cal. Civ. Sec. 2924c (West 1974). The Voorlases made *261 these payments and thereby effectively increased the outstanding debt between them and the petitioner. The payments by the Voorlases totaled $17,680.19 and represented payments of principal on the Allstate loan, interest on the Allstate loan, and other payments due including taxes and penalties thereon, trustee and attorney's fees in the amounts of $3,540.81, $10,319.19, and $3,820.19, respectively. We believe that these amounts should also be included with the outstanding principal balance on the second deed trust ($11,708) making $29,388.19 as the total amount realized from the cancellation of indebtedness with respect to the Voorlas loan and the subsequent Voorlas payments. Respondent believes that these payments should not be included in the amount realized, since under California law petitioner would not be personally liable to the Voorlases for these payments. Cal. Civ. Pro. Sec. 580b (West 1955). However, we believe it is well settled that personal liability is not relevant to the determination of the amount realized for federal income tax purposes. Crane v. Commissioner,331 U.S. 1 (1947). The payments made directly to Allstate by the Voorlases on petitioner's *262 behalf began in February, 1967. The Voorlases subsequently foreclosed on the Burbank property in July, 1967. Accordingly, we believe that petitioner should be entitled to an interest and tax deduction under sections 163 and 164, respectively, for his 50 percent share of the Voorlas payments that constitute interest ($10,319.19) and tax ($2,600.34) payments on the Allstate loan. Since all the events have taken place during 1967, we find it unnecessary to decide whether petitioner's payment of these items occurred as the Voorlases made these payments to Allstate or whether payment occurred at the foreclosure sale. See Helvering v. Midland Ins. Co.,300 U.S. 216 (1937). Petitioner then is entitled to an interest deduction of $5,159.59 (one-half of $10,319.19), and a tax deduction of $1,300.17 (one-half of $2,600.34). We also believe that petitioner is entitled to deduct his share of the remaining portion of the other charges paid ($1,219.85) by the Voorlases representing trustee ($332.25) and attorney ($887.60) fees. The fees were paid to maintain the Allstate loan and would be amortizable over the life of the loan. Anover Realty Corp.,33 T.C. 671 (1960). *263 However this Court has held that any remaining unamortized portion may be fully deducted in the year the loan is prematurely ended. Anover Realty Corp.,supra, at 674. These fees were paid in February, 1967 and petitioner's interest in the loan was prematurely ended in July, 1967. Consequently, petitioner is entitled to a full amortization deduction for these fees of $609.93 (one-half of $1,219.85). Here too, since all the events occurred in 1967, we need not decide when petitioner's payment occurred. Finally petitioner and respondent disagree with respect to the figure to be used for the amount realized on the Moore loan. Petitioner has included nothing claiming it had no value at the time of the foreclosure sale. Respondent's figure of $17,045 represents the outstanding principal balance of the Moore loan at the time of the foreclosure sale. We agree with respondent's figure, the value of the Moore loan is not relevant for these purposes. [10]Crane v. Commissioner,supra.
*264 As a result of our discussion we believe the proper calculation of the final result of the foreclosure sale should be as follows: Cost
Land
$ 41,000.00
Building
180,000.00
$221,000.00
50 percent to petitioner
$110,500.00
Depreciation
5,062.50
Adjusted Basis
$105,437.50
Amount Realized
First Trust Deed
$168,601.00
Second Trust Deed
29,388.19
Third Trust Deed
17,045.00
$215,034.19
50 percent to petitioner
107,517.10
Gain on Foreclosure Sale
$ 2,079.60 We believe this gain should be reported as long-term capital gain pursuant to section 1231, [11] and, as noted previously, petitioner is entitled to deductions of $5,159.59, $1,300.17 and $609.93 for interest, taxes, and trustee and attorney's fees, respectively. In *265 addition to the figures that have entered in the calculations as discussed above, petitioner asserts there are other items that could be used to increase his loss (now decrease his gain) on the foreclosure sale. In 1964 a check for $1,800 was issued to Copp Investment Co. for their efforts in securing the Allstate loan on the Burbank property. As we have noted, this Court has held that such a fee must be amortized over the life of the loan (not the asset that is produced as a result of the loan), but that the remaining unamortized portion may be fully deducted if the loan is prematurely ended. Anover Realty Corp.,supra, at 674. In this case petitioner's use of the Allstate loan funds was prematurely ended with the foreclosure sale, and petitioner would be entitled to deduct the unamortized portion of his 50 percent share of this commission in 1967. However, petitioner has not met his burden of proof with respect to the life of the Allstate loan. Without this vital fact we do not know the amortization deduction that petitioner was entitled to in previous years or the remaining unamortized portion available for deduction in 1967. We have no choice but to hold *266 against petitioner on this matter. Petitioner, on his 1967 tax return, included in his foreclosure loss a $1,000 transportation expense for automobile mileage expenses (10,000 miles at $.10 per mile) incurred during and attributable to the construction of the Burbank property. On brief petitioner increased this expense to $1,500, claiming a $.15 per mile expense rate. At trial petitioner admitted that this mileage was incurred between 1962 and 1964, and claims that he capitalized these expenses in lieu of expensing them. Petitioner has introduced no evidence to corroborate his own unsupported testimony. We do not believe petitioner has met his burden of proof with respect to this issue either. Even if petitioner did capitalize these expenses, there is no indication that petitioner ever filed the appropriate election as required by section 266[12] and section 1.266-1(c) Income Tax Regs.
*267 Petitioner also claims that he capitalized interest payments made on the various outstanding loans on the Burbank property during the period 1962 through 1966. As previously stated petitioner's federal income liability for 1964, 1965, and 1966 was determined by this Court and later affirmed by the Court of Appeals, Edward Harris,supra, and the determinations included an allowance for interest deductions for those years with respect to the Burbank property. As for 1962 and 1963, even if petitioner did capitalize all of his interest expenses, again there is no indication that petitioner ever filed the appropriate election under section 266. Section 1.266-1(c)(1). This claim must also be denied. Finally petitioner claims he has a net operating loss carryover available for 1967 from which he can benefit. The computations under Rule 50 (now Rule 155) of the Rules of Practice and Procedure of this Court that were approved by the Court of Appeals clearly show that petitioner did have a net operating loss carryover, that it was applied in prior years for his benefit, and that it was exhausted during 1966. Petitioner's claim must be denied. Decision will be *268 entered under Rule 155.
Footnotes
1. This figure was increased to $172,169.92 in January, 1967 when $28.50 of legal fees was added to the outstanding principal balance. This amount was later credited to the outstanding loan balance in March, 1967. ↩
2. The loan payment schedule actually shows that only nine monthly payments were made. The payments for April and May are not shown. However, the outstanding loan balance decreases between March and June by $649.17, the approximate decrease (judging from other monthly payments) that would have been caused by two regular payments. ↩
3. The record does not clearly indicate who made these payments, but we can only assume that they were made by the Voorlases.↩
4. This does not include the $17,680.19 paid by the Voorlases to Allstate in petitioner's behalf as noted above.↩
5. Petitioner's calculation of his foreclosure loss in his tax return does not conform to the statutory concepts of basis and amount realized and is not comparable to respondent's calculations. Petitioner's calculation of his loss in his brief is comparable, however, and it, along with respondent's calculation, are as follows: Cost
Petitioner
Respondent
Land
$ 41,000
$ 41,000
Building
180,000
180,000
$221,000
$221,000
50 percent to petitioner
$110,500
Depreciation
4,050
18,224
Adjusted Basis
$106,450
Adjusted Basis
$202,776
Cancelled Obligations
First Trust Deed
$168,601
$168,601
Second Trust Deed
26,550
11,708
Third Trust Deed
0
17,045
Total Sales Price
$195,151
197,354
50 percent to petitioner
97,575↩
Total Loss
$ 5,422
(of which 50 percent to
petitioner)
Foreclosure Loss
$ 8,885 [sic]
$ 2,711
6. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
7. Respondent has not questioned this deduction in the instant case although it appears petitioner is actually entitled to only one-half of the claimed $1,012.50 depreciation. One-fourth of $4,050 equals $1,012.50.↩
8. Respondent in arriving at his figure apparently mistook the depreciation figures as representing the individual amounts for petitioner and Lawrence. When respondent calculated the foreclosure loss on the Burbank property (before allocating petitioner his share) he doubled the depreciation figures. Depreciation of $4,050, $4,050 and $1,012 for 1965, 1966 and 1967, respectively, equals $9,112.↩
9. Petitioner's figure apparently reflects the amount that was bid by the Voorlases at the foreclosure sale, and respondent's figure apparently reflects the outstanding principal balance of the Voorlas loan at the time of the foreclosure sale.↩
10. We believe respondent's action with respect to the Moore loan supports our conclusions with respect to the Voorlas loan. If California law would protect petitioner from personal liability with respect to the Voorlas loan (the second trust deed), then California law would also cut off petitioner's personal liability with respect to the Moore loan (the third trust deed); yet respondent included the full outstanding principal balance of the Moore loan in the amount realized portion of his calculation of the loss on the foreclosure sale.↩
11. Although this point was not argued before this Court, after consideration of the evidence in the record in this case and those as reported in petitioner's previous case, Edward Harris,T.C. Memo.↩ 1970-331, we believe that the Burbank property in petitioner's hands meets the definition set forth in section 1231(b) and that this characterization is appropriate.
12. SEC. 266. CARRYING CHARGES. No deduction shall be allowed for amounts paid or accrued for such taxes and carrying charges as, under regulations prescribed by the Secretary or his delegate, are chargeable to capital account with respect to property, if the taxpayer elects, in accordance with such regulations, to treat such taxes or charges as so chargeable.↩