H. K. FRANCIS and MITTIE C. FRANCIS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Francis v. Commissioner
Docket No. 7646-75.
United States Tax Court
T.C. Memo 1977-170; 1977 Tax Ct. Memo LEXIS 270; 36 T.C.M. (CCH) 704; T.C.M. (RIA) 770170; June 7, 1977, Filed Joe T. Booth, III, for the petitioners. Thomas R. Thomas, for the respondent. QUEALY
MEMORANDUM FINDINGS OF FACT AND OPINION QUEALY, Judge: Respondent determined deficiencies in petitioners' Federal income tax for the years 1972 and 1973 in the amounts of $9,027.44 and $12,536.11. The issues for decision are as follows: (1) Whether petitioners are entitled to claim certain deductions under section 162[1] as being connected with the operation of a *271 trade or business. (2) Whether loan commitment fees paid by petitioners are deductible as ordinary and necessary business expenses or are amortizable over the period of the mortgage. (3) Whether petitioners received an informal dividend from the bargain purchase of an automobile from a corporation in which petitioner held a 50 percent interest. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioners, H.K. and Mittie C. Francis, husband and wife, filed their 1972 and 1973 joint Federal income tax returns with the Internal Revenue Service Center, Chamblee, Georgia. At the time the petition was filed, petitioners resided in Montgomery, Alabama. H. K. Francis will hereafter be referred to as petitioner. In the period prior to the taxable years in issue here, petitioner was involved in a number of business enterprises, including the operation of one rental property. Among these interests, petitioner owned one-third of the stock of Business Services Consultants, *272 Inc., hereinafter referred to as BSCI. The remainder of the stock in this corporation was owned by Mrs. W. Jean Hicks. Petitioner had acquired in late 1971 a parcel of approximately three acres of vacant land in Prattville, Alabama, which he intended to develop. The original commitment for a construction loan for this development had been obtained in the name of BSCI. But petitioner and Mrs. Hicks arranged to have this commitment transferred to petitioner, individually. In order to obtain this loan, petitioner paid on June 20, 1972, a loan commitment fee of $6,400 from his personal funds. As a result of this arrangement, petitioner was able to obtain a construction loan in the amount of $320,000 from Great American Mortgage Investors, hereinafter referred to as GAMI, for the construction on the Prattville lot of a 32-unit apartment complex known as the Doral Apartments. As part of the transaction, petitioner and Mrs. Hicks entered into a construction loan agreement with GAMI specifying the terms and conditions for advancing the proceeds of the loan with BSCI constructing the apartments. In addition to the construction loan, petitioner had received a commitment from Cobbs, *273 Allen & Hall Mortgage Co., Inc., for the financing of a permanent mortgage after construction. This commitment was acquired by the payment of $3,200 on November 7, 1972, from the proceeds of the construction loan. The $3,200 loan commitment fee paid to Cobbs, Allen & Hall Mortgage Co., Inc., was for the purpose of insuring that that firm would reserve long-term mortgage funds during the period of construction and make them available at the time the permanent loan was closed at a fixed rate of interest. The short-term construction loan and the permanent financing had significantly different terms and interest rates. The rate of interest of the construction loan was 3 1/2 percent per annum above the prime interest rate established by the First National City Bank in New York City, New York, computed on the basis of a 360-day year. The rate of interest on the permanent mortgage was at a fixed rate of 9 5/8 percent per annum. On November 28, 1972, petitioner and BSCI entered into a construction contract and a purchase agreement. BSCI agreed to construct the Doral Apartments at its cost in exchange for an agreement to acquire the apartment complex after three years. The purchase *274 price for the apartments included petitioner's out-of-pocket expenses for development of the land and the construction of the apartments, an amount estimated at between $10,000 and $20,000, plus the assumption of the outstanding mortgage. Under the terms of the agreement, petitioner was entitled to take all expenses and depreciation from the apartment complex and had the risk of the profit or loss from the operation of the apartments over the three-year period. From the latter part of 1972 until June 1973, the Doral Apartments were under construction. The construction loan was replaced by permanent financing on May 15, 1973. The apartments were finally completed, occupied and producing income in June 1973. In March 1974, petitioner was forced to sell the apartments to Lowe's, Inc., a building supply company. Circumstances compelled BSCI to consent to this sale. Lowe's had accumulated $108,000 worth of liens against BSCI for materials provided for the construction of projects other than the Doral Apartments. Petitioner was liable on these notes as an endorser of the paper representing the liens. The sales price for the Doral Apartments was the release and relinquishment of *275 the liens and the assumption of the $320,000 mortgage. Subsequently, BSCI went into bankruptcy and would never have been able to exercise its option to purchase the apartments. On September 28, 1972, petitioner sold his 50 percent interest in Urban Consultants, Inc. Before he sold his interest, he arranged the purchase for $1,405.00 of a 1969 Oldsmobile Cutlass which the corporation had purchased for his use. The purchase represented the book value of the automobile to Urban Consultants, Inc. This automobile was valued in the NADA Automobile Valuation Guide as of August 1972, at $2,075.00. In his income tax return for the taxable year 1972, petitioner claimed as deductions attributable to the Doral Apartment project the following: Taxes
$ 145.00
Insurance
1,831.00
Legal and Professional Fees
9,600.00
Maps and Office Supplies
157.63
Auto Expense
149.25
Books and Periodicals
31.00
Business Travel
180.44
Professional Societies
91.00
Recording Fees
496.10
Total
$12,681.42 [2]
In his income tax return for the taxable year 1973, petitioner claimed as deductions attributable *276 to the Doral Apartment project the following: Insurance
$ 1,197.00
Legal Fees
15.00
Rental Commissions
925.00
Interest
14,668.00
Maps
9.00
Auto Expense
133.00
Books and Periodicals
117.00
Business Travel
182.00
Professional Societies
43.00
Advertising
795.00
Stenographic
15.00
Bank Charges
11.00
Utilities
1,204.00
Total
$19,314.00
In addition, petitioner deducted on his 1972 return the loan commitment fees in the amount of $9,600 as a prepaid interest expense. Respondent initially disallowed the deduction of all expenses and the loan commitment fees on the grounds that petitioner was not in the trade or business of operating a rental apartment. Respondent now concedes that petitioner is entitled to deduct an additional $14,668 as interest in 1973. OPINION Issue 1. Trade or Business
Petitioner entered into an agreement with BSCI whereby the corporation would construct the Doral Apartments at cost in exchange for an option to purchase the apartments after three years for petitioner's out-of-pocket construction and development costs plus the assumption of the mortgage. Respondent contends that this transaction was a sham because *277 petitioner could not have entered the transaction for a profit but solely to obtain the tax deductions to which petitioner would normally be entitled as the record owner of the property. However, it is clear that petitioner's ownership of the apartments was bona fide and that he had assumed the genuine risks of profit or loss on a trade or business. The contract between petitioner and BSCI for the option to purchase the Doral property limits the purchase price to the petitioner's out-of-pocket expenses for the development of the property and the construction of apartments on the property. There is nothing in the record to suggest, as respondent does, that this agreement served to remove the risk of being in a trade or business of operating the apartment complex. While the future sales price was fixed at a point of three years in the future, petitioner received the present economic benefit of having the apartment complex constructed at the builder's cost and had the benefit of the income generated by the apartment complex over the three-year period. Presumably, he also retained the risk of loss in case of the destruction of the property. This is clearly not a situation where *278 taxpayer has divested himself of all but bare legal title to a property. See Bolger v. Commissioner,59 T.C. 760 (1973). Cf. Davis v. Commissioner,66 T.C. 260 (1976). In the alternative, respondent contends that petitioner was not in the trade or business of operating the Doral Apartments until June 1973, when the complex was finally completed and producing income. Respondent maintains, in such a situation, that the preopening expenses taken on the 1972 and 1973 returns should be capitalized. Petitioner argues that since he owned another rental property he is already in a trade or business and so these payments are deductible as ordinary and necessary business expenses.
The general rule is that an expenditure in connection with the acquisition of a capital asset is a capital investment and hence not deductible as an ordinary and necessary expense of carrying on business. Acer Realty Co. v. Commissioner,132 F.2d 512, 514 (8th Cir. 1942), affg. 45 B.T.A. 333 (1941); Cagle v. Commissioner,63 T.C. 86, 97 (1974); *279 Perlmutter v. Commissioner,44 T.C. 382, 403-5 (1965), affd. 373 F.2d 45 (10th Cir. 1967); Shainberg v. Commissioner,33 T.C. 241, 249 (1959). See also Commissioner v. Idaho Power Co.,418 U.S. 1 (1974). The fact that a capital asset is built or developed through a taxpayer's own efforts does not change the character of the expenditures incurred in acquiring such an asset. Perlmutter v. Commissioner,supra.
Moreover, the fact that petitioner had another rental property would not change this result. There is no evidence that these expenditures were to benefit any project but the Doral Apartments. We cannot consider the activities surrounding the construction and development of the Doral project to be an integral part or extension of an unrelated and geographically removed rental property. Such expenditures must be considered as being for the development of a new business. See Richmond Television Corp. v. United States,345 F.2d 901 (4th Cir. 1965), vacated and remanded on other grounds per curiam, 382 U.S. 68 (1965), on remand 354 F.2d 410 (4th Cir. 1965). *280 However, it is clear that by June of 1973, petitioner was in the trade or business of operating a rental apartment complex. The parties have stipulated that by that time the Doral Apartments were completed, occupied and producing income. Consequently, the expenses claimed in 1973 can be distinguished from those claimed in 1972. Respondent concedes the deductibility of certain of these expenses, namely the expenditures for interest, advertising and utilities, if it is held that the petitioners were in a trade or business after June 1973. In addition to the expenditures conceded by respondent, we conclude that the amounts paid as rental commissions and maps are deductible as entirely attributable to the operation of a trade or business. The remaining charges or expenses which are in the nature of indirect or overhead expenses should be apportioned. Since petitioner was clearly engaged in a trade or business for seven months of the year of 1973, seven-twelfths of these charges should be allowed as ordinary and necessary business expenses. Additionally, we also hold that the taxes deducted by petitioner in 1972 are deductible expenses pursuant to section 164 rather than capital *281 outlays since they may be deducted rather than capitalized. See section 1.266-1(a), Income Tax Regs.
Issue 2. Loan Commitment Fees
Petitioner deducted in 1972 two loan commitment fees which were to secure the financing for the construction and permanent mortgages. Respondent contends that these expenditures are capital in nature and should be spread over the total period of both mortgages. Petitioner now takes the position that such fees are not interest since they are not payments for the use or forbearance of money, but are deductible as ordinary and necessary business expenses under section 162.
The rule is well established that although fees paid to obtain financing are not interest, such payments are to be amortized over the definite period of the loan or mortgage. Lovejoy v. Commissioner,18 B.T.A. 1179, 1182 (1930). See Enoch v. Commissioner,57 T.C. 781, 795 (1972); Anover Realty Corp. v. Commissioner,33 T.C. 671 (1960); Longview Hilton Hotel Co. v. Commissioner,9 T.C. 180 (1947); *282 Chicago, Rock Island & Pacific Railway Co. v. Commissioner,13 B.T.A. 988, 1035 (1928). See also Rev. Rul. 75-172, 1975-1 C.B. 145. But we cannot agree with respondent's contention that the two separate loan commitment fees must be amortized over the total period covered by the two separate mortgage loans. These two loans represent separate and distinct obligations. They were obtained from different parties at different terms. The construction loan was obtained from GAMI. The rate of interest on that loan was 3 1/2 percent per annum above the prime interest rate set by the First National City Bank in New York City, New York. The permanent mortgage funds were borrowed from the Cobbs, Allen & Hall Mortgage Co., Inc., at the firm rate of 9 5/8 percent per annum. Respondent has not provided any precedent for aggregating the term of these loans for the purpose of amortization, nor have we found any. Accordingly, the loan commitment fees of $6,400 for the construction loan and $3,200 for the permanent mortgage should be amortized over the periods of their respective mortgages. However, since the amortization of the fee paid for the construction loan *283 falls within the construction period, the amount amortized must be capitalized as a part of the cost of construction. Issue 3. Bargain Sale
When petitioner sold his 50 percent interest in Urban Consultants, Inc., he was provided the opportunity to purchase the automobile which the corporation had provided for his use. He purchased the automobile for its book value of $1,405. At that time, this type of automobile was valued at $2,075 on the NADA Automobile Valuation Guide. Petitioner testified that because he was crippled the automobile had incurred more wear and tear than would be usual. Accordingly, we conclude that the automobile had a value of $1,800 and that petitioner received an informal dividend to the extent of his bargain purchase. Palmer v. Commissioner,302 U.S. 63 (1937). Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, unless otherwise indicated.↩
2. On his 1972 return, petitioner totaled these expenses as $12,681.00.↩