**BOISE CASCADE CORPORATION et al.,**
Plaintiffs,

v.

**UNITED STATES of America,**
Defendant.

**Civ. No. 1–67–16.**

United States District Court
D. Idaho, S. D.

July 12, 1968.

Eberle & Berlin, Boise, Idaho, for plaintiffs.

Jerome Fink, James P. Parker, Dept. of Justice, Tax Division, Washington, D.C., Sylvan A. Jeppesen, U. S. Atty., Boise, Idaho, for defendant.

## MEMORANDUM OF DECISION

FRED M. TAYLOR, Chief Judge.

This is an action for a refund of federal income taxes alleged to have been erroneously assessed and collected by the Commissioner of Internal Revenue. The total amount of refund sought is $318,-263.81, plus statutory interest. This court has jurisdiction pursuant to 28 U. S.C.A. § 1346(a) (1).

Boise Cascade Corporation and its affiliated subsidiaries (taxpayer) filed a consolidated income tax return for the year 1960. Following an audit of said return, a deficiency was assessed and was paid by the taxpayer. A timely claim for refund was filed, which was disallowed by the Commissioner of Internal Revenue, through his authorized agent, the District Director of Internal Revenue. The deficiency was not as a result of operating income of taxpayer for 1960, but as a result of the method used in determining the bases of certain properties taxpayer acquired through a corporate acquisition made in 1960.

Pursuant to stipulated facts contained in the Pre-Trial Conference Order, taxpayer and the United States of America (defendant) each made separate motions for a summary judgment.

The stipulated facts disclose, inter alia, that on February 1, 1960, taxpayer purchased the capital stock of Hallack & Howard Lumber Company (H & H) directly from the stockholders of H & H. Taxpayer paid $5,463,058.67 for said stock and assumed the liabilities of H & H.

On November 30, 1960, H & H was merged into taxpayer and liquidated. This merger and liquidation met the requirements of § 332 of the Internal Revenue Code of 1954, thus no gain or loss was recognized by taxpayer as a result thereof. Since this stock acquisition, merger and liquidation met the requirements of § 334(b) (2) of the Internal Revenue Code of 1954, then in determining the basis of the assets acquired from H & H through the merger and liquidation § 334(b) (2) and the applicable regulations must be followed.

Taxpayer's adjusted purchase price of the H & H stock at the date of liquidation was $6,793,655.82, which included the assumed liabilities of H & H. The assets of H & H at the date of liquidation had a fair market value of $9,-488,342.43. Included within said sum were pre-paid supplies with a fair market value of $30,083.00, marketable securities with a fair market value of $1,-128,068.00, inventories with a fair market value of $1,119,508.00, accounts receivable with a fair market value of $3,424,406.00, cash in the amount of $99,296.00, and deposits in the amount of $103,000.00. On the date of liquidation taxpayer owed to H & H the sum of $2,302,856.04, which was an account receivable of H & H and is included in the figure of $3,424,406.00.

Section 334(b) (2) provides the method by which a corporation may purchase the stock of a second corporation, liquidate the acquired corporation, and treat the assets of the acquired corporation, for tax purposes, as if the assets had been purchased directly from the acquired corporation. The pertinent part of § 334(b) (2) provides:

"[T]he basis of the property in the hands of the distributee shall be the adjusted basis of the stock with respect to which the distribution was made. * * * [U]nder regulations prescribed by the Secretary or his delegate, proper adjustment in the adjusted basis of any stock shall be made for any distribution made to the distributee with respect to such stock before the adoption of the plan of liquidation, *for any money received,* for any liabilities assumed or subject to which the property was received, and for other items." (emphasis added)

The Secretary pursuant to the directive contained in § 334(b) (2) promulgated regulations for determining the adjusted basis of stock and the allocation of that basis among the assets of a liquidated corporation. The question

here is the interpretation to be given to the phrase "cash and its equivalent" as that phrase is used in the regulations promulgated by the Secretary.

Treasury Regulations §§ 1.334–1(c) (4) (v) (b) (1) and 1.334–1(c) (4) (viii) (1954) contain the phrase "cash and its equivalent" which is the subject matter of this action. The pertinent portion of § 1.334–1(c) (4) (v) (b) (1) provides:

"(v) The adjusted basis of the subsidiary's stock held by the parent with respect to which the distributions in liquidation are made * * *.

*    *    *    *    *    *

(b) Shall be decreased:

(1) By the amount of any *cash and its equivalent* received, * * *."
(emphasis added)

The pertinent portion of § 1.334–1(c) (4) (viii) provides:

"[T]he amount of the adjusted basis of the stock adjusted as provided in this paragraph shall be allocated as basis among the various assets received (*except cash and its equivalent*) both tangible and intangible * * *. Ordinarily, such allocation shall be made in proportion to the net fair market value of such assets on the date received * * *. The basis of the property received shall be zero if the *cash and its equivalent* received is equal to or in excess of the adjusted basis of the stock." (emphasis added)

Taxpayer in allocating the adjusted basis of the H & H stock took the position that cash, deposits, marketable securities, inventories, accounts receivable and pre-paid supplies were included within the phrase cash and its equivalent. Accordingly, taxpayer deducted the total of said items from the adjusted purchase price of $6,793,655.82 and allo-

cated the remainder to the remaining assets.

Defendant in assessing the deficiency took the position that only cash, deposits and accounts receivable should have been included with the phrase cash and its equivalent.[1]

Since taxpayer used 100% of the fair market value as the basis of the marketable securities, inventories, accounts receivable and pre-paid supplies, taxpayer reported no gain on these assets when they were sold during the taxable period in question. The deficiency as assessed by the defendant was based on the difference between the fair market value and the new basis, as determined by the defendant, of the marketable securities, inventories and pre-paid supplies.

■ After a full and careful consideration of the excellent briefs filed by each of the parties, the oral arguments and the Pre-Trial Conference Order, this court is of the opinion that the phrase "cash and its equivalent" as used in Treas.Regs. §§ 1.334–1(c) (4) (v) (b) (1) and 1.334–1(c) (4) (viii) (1954) does not include marketable securities, inventories, pre-paid supplies[2] and accounts receivable. However, the debt owed by taxpayer to H & H ($2,-302,856.04), which was an indebtedness of the taxpayer, should be treated as cash and its equivalent.

■ Defendant has conceded in its briefs that the $2,302,856.04 taxpayer owed to H & H should be treated as cash and its equivalent. This is necessarily correct because when an indebtedness of a parent is received upon liquidation of its subsidiary the indebtedness, in effect, ceases to exist because the parent receives its own indebtedness on liquidation.

---

1. While the defendant in assessing the deficiency took the position that accounts receivable were the equivalent of cash, it is now the defendant's position that accounts receivable should not have been so treated. See Rev.Rul. 66–290, 1966–2

Cum.Bull. 112. The applicable statute of limitations prevents the defendant from making any greater deficiency assessment.

2. Counsel for taxpayer agreed in oral argument that pre-paid supplies should not be treated as cash and its equivalent.

Taxpayer contends that the disputed assets each had a readily realizable market value[3] and because of this they should be treated as cash and its equivalent. Defendant contends that assets with a readily realizable market value are not to be treated as cash and its equivalent, since the phrase was meant to include only items which could not logically be given a basis, such as currency, coin, bank accounts, checks, drafts, money orders, etc.

At no other place in the current code and regulations has the phrase "cash and its equivalent" been used. There has been no judicial interpretation of the phrase as it is used in the present regulations. Taxpayer has placed great emphasis on prior revenue acts and the regulations applicable thereto wherein the phrase was used. In the opinion of the court, these prior acts, regulations and judicial interpretations of the phrase are inapposite to the question presented here. The decisions relied upon by taxpayer did not deal with an allocation of a basis problem such as is now before this court. Those decisions deal with income realization problems, whether a corporate reorganization qualifies for tax-free treatment and questions of taxable and non-taxable exchanges of property.

Section 334(b) (2) requires that certain adjustments be made to the basis of the stock of the subsidiary before that basis is allocated among the assets of the subsidiary. These adjustments are necessary in order to prevent a distortion of basis in the assets of the subsidiary. Section 334(b) (2) specifies these adjustments as follows: (1) any distribution made to the distributee with respect to such stock before the adoption of the plan of liquidation; (2) any money received; (3) any liabilities assumed or subject to which property was received; and (4) other items.

An analysis of the regulations promulgated by the Secretary in light of the statute makes it clear to the court that the regulations were intended only to provide for the adjustments specified in the statute. The first adjustment is taken care of by § 1.334–1(c) (4) (i); the second adjustment (money received) is taken care of by § 1.334–1(c) (4) (v) (b) (1); the third adjustment is taken care of by §§ 1.334–1(c) (4) (v) (a) (1) and 1.334–1(c) (4) (viii); the fourth adjustment (other items) is taken care of by §§ 1.334–1(c) (4) (v) (a) (2) (subsidiary's earnings and profits) and 1.334–1(c) (4) (v) (b) (2) (deficit in earnings and profits).

It is apparent that the Secretary did provide for all four items set out in § 334(b) (2). It also seems clear to the court that the fourth item, "other items", was not meant to include assets with a readily realizable market value since the Secretary provided in the regulations an increase in basis for earnings and a decrease for deficit in earnings as "other items". Taxpayer's argument that "money * * * and other items" includes assets with a readily realizable market value is not convincing since the Secretary specifically set out what is intended by "other items".

■■■■ Section 334(b) (2) provides an adjustment for "money" and the regulations provide an adjustment for "cash and its equivalent". The two have to be the same since the regulations cannot make the statute more inclusive than it is. Cash and its equivalent is intended to encompass the term "money", i.e., items which do not logically have a basis.

■■■■ Taxpayer, in opposition to the defendant's motion for summary judgment argues that if the court determines that cash and its equivalent does not include the disputed assets, then a genuine

3. The marketable securities were sold for $1,128,068.00, one day after liquidation. The parties have stipulated that the accounts receivable could have been sold on the date of liquidation for $3,253,186.00, which is a 5% discount on $3,424,406.00, the fair market value of the accounts receivable.

issue of material fact remains and summary judgment should not be granted. Taxpayer claims that when it acquired the stock of H & H it had the specific intent to pay the full cash value for the money, deposits, pre-paid supplies, marketable securities, inventories and accounts receivable. Taxpayer contends that because it had this intent, then in the allocation of basis to the assets of H & H the disputed assets should have as their basis 100% of their full, fair market value. Taxpayer seems to be asserting that even if the regulations under consideration had used the term money instead of cash and its equivalent, the parties would still be in court litigating the allocation of basis as to the disputed assets. Taxpayer argues that if a corporation acquires the stock of another corporation and liquidated it, the acquiring corporation's intent governs the basis that the assets of the liquidated corporation must receive. Taxpayer in essence seeks to transform a stock acquisition into an assets acquisition. This court cannot agree.

█ Treasury Regulation § 1.334–1(c) (4) (viii) (1954) provides the proper method of allocating basis among assets distributed in a § 334(b) (2) acquisition and liquidation. Section 334(b) (2) was passed by Congress to eliminate a subjective intent test enunciated in Kimbell-Diamond Milling Co. v. Commissioner, 14 T.C. 74 (1950), affirmed *per curiam*, 187 F.2d 718 (5th Cir.1951), certiorari denied, 342 U.S. 827, 72 S.Ct. 50, 96 L.Ed. 626 (1951). *Kimbell-Diamond Milling* required the acquiring corporation to have the intent of acquiring the assets of another corporation by stock acquisition and liquidation before the acquiring corporation could use as a basis the purchase price of the stock in allocating basis among the assets of the acquired corporation. Without this intent the acquiring corporation would receive as a basis of the assets received in liquidation, the basis the assets had in the hands of the subsidiary. Section 334(b) (2) eliminated this intent test and much litigation was laid

to rest. Taxpayer endeavors to offer another intent test in a § 334(b) (2) acquisition and liquidation problem. Congress eliminated one intent test which gave rise to considerable litigation and this court does not believe another intent test is justified in this case. The intent of the taxpayer at the time of acquiring the stock is not material to a determination of the question presented here.

The method of allocation specified in the regulations and used in a stock acquisition and liquidation problem is fair and equitable. Taxpayer has not demonstrated any necessity for departing from these regulations under the circumstances of this case. While taxpayer may have preferred to purchase the assets rather than purchasing the stock, taxpayer must be bound by the regulations applicable to a stock acquisition and liquidation situation. The proportionate allocation made in this instance was fair and reasonable. If taxpayer's method of allocation were used it would give some assets a basis equal to 25% of fair market value and a basis equal to 100% for the disputed assets, rather than the 71% basis of fair market value to all assets as the basis used by defendant.

In summary, this court is of the opinion that cash and its equivalent as that phrase is used in the regulations under consideration here does not include marketable securities, inventories, pre-paid supplies and accounts receivable from third parties. In the opinion of the court there is no merit to taxpayer's contention that the rule of proportionate allocation specified by § 1.334–1(c) (4) (viii) (1954) of the Treasury Regulations should not be followed in this instance. Taxpayer's intention in regard to what it would have paid for certain assets is not relevant and material to a resolution of the question here and taxpayer's contention in this regard is not meritorious.

Accordingly, it is Ordered as follows: that plaintiffs' motion for a summary

judgment be, and the same hereby is, denied; that defendant's motion for a summary judgment be, and the same hereby is, granted; and that counsel for the defendant shall prepare a proposed judgment, serve a copy of the same on counsel for the plaintiffs and submit the original thereof to the court.