VICTOR MEAT CO., INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5455–67. Filed September 10, 1969.

*Gregg M. Anderson,* for the petitioner.
*Jeffrey E. Boly* and *Edward B. Simpson,* for the respondent.

The sole issue concerns the proper basis of assets which petitioner acquired in June 1964.

The parties are in agreement as to the legal principles involved herein. Their dispute reaches only to the application of those principles to the facts of the instant case.

Section 1012 [3] of the Code and section 1.1012–1 of the regulations thereunder provide that the basis of property is generally the cost of such property. Neither the Code nor the regulations provide any additional assistance in determining what is the cost of the separate items of a lump-sum purchase of an integral business. It is established, however, that when a taxpayer buys a mixed aggregate of assets for a lump sum, an allocation of the purchase price will be made to the separate items upon the relative value of each item to the value of the whole. *Nathan Blum*, 5 T.C. 702 (1945); *O. D. Johnson Lumber Corporation*, 12 T.C. 348, 363 (1949). As a further refinement of this method, it is equally established that the purchaser should eliminate from the allocation whatever *cash and its equivalents* he acquires. A sufficient amount of the purchase price is apportioned to these assets so that their bases are their face or book values. The balance of the purchase price is allocated to the remaining assets. *F. & D. Rentals, Inc.*, 44 T.C. 335 (1965), affd. 365 F. 2d 34 (C.A. 7, 1966), certiorari denied 385 U.S. 1004 (1967); 3A Mertens, Law of Federal Income Taxation, sec. 21.32, p. 99.

The dispute between the parties centers on what assets should be considered the equivalent of cash. Petitioner contends that its receivables, inventory, supplies, and various prepaid expenses, including prepaid insurance, are cash equivalents and as such their bases should be their

---

[3] All section references are to the Internal Revenue Code of 1954.

fair market values. If petitioner's argument prevails and these assets are not treated in the same manner as the other assets, their bases will be greater than if they received only an allocated portion of the total purchase price.

Let us examine each of the assets in question separately. The receivables were of two types, trade and employee. Although the employee receivables are relatively small in amount, petitioner might have offered some evidence with respect to them. Since petitioner did not, our only alternative is to hold that the employee receivables were not equivalent to cash.

We have decided that the trade receivables were not cash equivalent notwithstanding that most of them were collected within 30 days of their purchase by petitioner. From the fact that petitioner has already written off almost $1,500 as a bad debt and another $4,400 remains uncollected, we must conclude that petitioner encountered difficulty in attempting to collect these trade receivables. The trade receivables were open accounts, payment of which was completely dependent upon the unsecured credit of Miller's customers.

Petitioner offers an additional reason why we should specifically consider $38,329.42 of the total trade receivables as the equivalent of cash. The purchase of Miller's assets occurred as of the close of business on Saturday, June 27, 1964. At the trial the accountant for petitioner testified that some of Miller's customers customarily issued their checks on Saturday or Sunday. Petitioner thus reasons that the amount of $38,329.42 which it collected on or before Thursday, July 2, 1964, had been already mailed when the contract of purchase was entered into and should be treated as cash. Such testimony of the accountant as to the usual practice of Miller's customers was not persuasive. His testimony was too general and lacked specificity regarding individual customers. For instance, petitioner might have established that certain designated payments received on Tuesday, Wednesday, or Thursday following the sale were actually in transit during the weekend. In this regard we note that an employee of Miller or petitioner picked up certain payments at the post office on Monday, June 29, 1964. These payments were posted in the cash receipts journal of Miller for Friday, the day preceding the sale. Thus, the amounts collected on that Monday already appear as cash on the closing balance sheet of Miller and cannot be also included in the disputed amounts alleged by petitioner to have been in transit over the weekend.

We next consider the inventory, which turned as rapidly as 43 times per year. Despite such rapid turnover, we still do not consider the inventory equivalent to cash. The inventory was in varying stages of process, ranging from raw meat to completed products. Petitioner did

not produce evidence as to the fair market value of any of the three elements of inventory—raw materials, work-in-process, and finished goods. See *F. & D. Rentals, Inc., supra* at 346–347. Therefore, we need not speculate what our position would be if such evidence had been submitted regarding the completed products.

Petitioner has not submitted any argument why the supplies having a fair market value of $32,519.98 should be treated as cash. There is nothing in the record indicating the nature of these supplies. Petitioner has therefore failed to satisfy its burden of proof as to this item.

We have carefully considered the prepaid insurance as well as other prepaid expenses. Looking solely to the facts presented, we have decided to treat these items as the equivalent of cash.[4] See *F. & D. Rentals, Inc.*, and *Nathan Blum*, both *supra*. Respondent's reliance on the holding in *Boise Cascade Corporation* v. *United States*, 288 F. Supp. 770 (S.D. Idaho 1968) is misplaced. That case rested on the statutory language of section 334(b)(2) rather than on a factual footing. In the case at bar, we have no specific statutory language for guidance.

Before we ever reached the question whether any of the acquired assets were equivalent to cash, we carefully considered and then rejected petitioner's exhortation that we should adhere to its method of allocating the purchase price among all the assets acquired. Petitioner insists that its president agreed to the final purchase price only after he had assigned the same values to the various assets as petitioner now claims for their bases.

Petitioner's argument is too implausible in the face of what appears in the stipulation of facts. The parties have stipulated to the fair market values of the assets purchased. We have compared the stipulated values of fixed assets to petitioner's claimed bases in such assets:

| Assets | Agreed fair market value | Claimed basis |
|---|---|---|
| Land | $70, 000 | $15, 500. 71 |
| Buildings | 130, 000 | 65, 972. 59 |
| Machinery | 83, 210 | 20, 977. 87 |
| Autos | 12, 850 | 3, 261. 49 |
| Furniture and fixtures | 3, 940 | 993. 43 |

The above table suggests that this reasoning is without merit. The disparity between the claimed bases and the stipulated values of the fixed assets is too great for us to accept the veracity of petitioner's allegations.

*Decision will be entered under Rule 50.*

---

[4] The parties have stipulated that the lump-sum purchase price was $419,980.83. The total of petitioner's allocated bases amounts to $440,960.64. The difference in these amounts is not explained in the record. The matter can be reconciled under Rule 50, if necessary.