**MAYSTEEL PRODUCTS CORP.,**
**Plaintiff,**

v.

**UNITED STATES of America,**
**Defendant.**

**No. 70–C–262.**

United States District Court,
E. D. Wisconsin.

March 8, 1972.

Gibbs, Roper & Fifield, Milwaukee, Wis., for plaintiff.

David J. Cannon, U. S. Atty., Milwaukee, Wis., and Richard J. Sideman, Atty., Tax Div., U. S. Dept. of Justice, Washington, D. C., for defendant.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

In late November, 1964, a contract was executed under which the plaintiff in the above-entitled action, Maysteel Products Corp. ("new Maysteel") acquired the assets of Maysteel Products, Inc. ("old Maysteel"). Paragraph four of the contract provided, in part:

"The purchase price to be paid by Purchaser to Seller for the Property shall consist of the following:

"A. For all items of the Property (other than inventories) which are carried as current assets in Seller's books of account, the purchase price shall be an amount equal to the book value thereof on the Closing Date.

"B. For all items of the Property other than those described in paragraph 4 A above, the purchase price shall be:

"(i) the sum of $1,700,000; and

"(ii) the assumption by Purchaser of all of Seller's liabilities [with certain exceptions] . . .

less the purchase price of the assets described in paragraph 4 A above."

The plaintiff alleges in its complaint that its collected accounts receivable of old Maysteel in an amount totaling $673,974.39 during the fiscal years ending November 30, 1965 and November 30, 1966; the defendant agrees that such figure represented the face—and fair market—value of the accounts receivable.

Upon an audit of the plaintiff's federal income tax returns for the fiscal years in question, the district director of internal revenue determined that the accounts receivable should have been assigned a basis that represented the value which the fair market value of the accounts bore in relation to the total fair market value of the accounts receivable, inventories, fixed or depreciable assets, and patents and licenses obtained from old Maysteel. Since the portion of the total purchase price allocated by the district director to the above four categories was $1,147,998—a figure considerably below their total fair market value—the district director's determination reduced the plaintiff's basis in the accounts receivable to $249,574.87, an amount $424,399.52 less than the face value of the accounts receivable.

Reduction of the plaintiff's basis in the accounts receivables meant that the plaintiff realized ordinary income on the amounts collected by it on the accounts receivable in excess of $249,574.87 in 1965 and 1966. According to the district director's view, the plaintiff had an additional tax liability, which new Maysteel paid. The latter company then filed a claim for refund of $226,884.28, plus interest, and upon its claim being denied, suit was brought in this court.

The present action was tried to the court on January 11, 1972. At the outset of the trial, counsel for the plaintiff stated that the $673,974.39 initially claimed by the plaintiff to be the face value of old Maysteel's accounts receivable should have been reduced by a $50,500 reserve for bad debts to a figure of $623,474.39. In addition, a portion of the plaintiff's complaint relating to the deductibility of state personal property taxes in 1965 was dismissed by the court on the defendant's motion. Following the trial, both sides submitted briefs setting forth their respective positions.

The plaintiff argues that the purchase price for the accounts receivable was clearly set forth in the contract of sale and that the cost of the accounts receivable represented by the purchase price "was eminently reasonable in light of the price that could have been obtained for . . . [the accounts receivable] . . . if they had been sold to a third party." The plaintiff also contends that the defendant has failed to show that "the definitive contract between the parties was anything other than a valid agreement reached by arms-length bargaining."

The defendant, on the other hand, asserts that when the consideration paid for, or the basis of, a specific non-cash asset cannot clearly be determined—as in the present action—the problem is solved "by allocating the remaining basis among the non-cash assets in proportion to their relative fair market values." The defendant's approach can perhaps best be depicted by quoting from its brief:

" . . . the plaintiff argues that the allocation in the contract to accounts receivable was 'reasonable' because it approximated the assets's fair market value, and therefore the allocation determines the plaintiff's basis in the asset. That argument, however, misses the point: The Internal Revenue Service had already conceded the fair market value of the accounts receivable equalled its book value when

the Service redetermined the amount of plaintiff's basis in the accounts receivable.

"In the defendant's view, the problem at bar is not the fair market value of the accounts receivable but rather what consideration, if any, was paid by New Maysteel for this asset, and if none can be determined, then what is a proper method for determining its basis."

Section 1012 of the Internal Revenue Code (26 U.S.C. § 1012) provides, with some exceptions, that the basis of property "shall be the cost of such property." The plaintiff argues that the "cost" of the accounts receivable equalled their book value and that such cost was established by the contract of sale. However, as already noted, the defendant takes the position that there "is no rationale for attributing more basis" to the accounts receivable than to the other "non-cash assets" acquired from old Maysteel.

■ The plaintiff has the burden of proving that the district director's assessment was incorrect and that the basis or cost assigned by the taxpayer to the accounts receivable is appropriate. See Zeeman v. United States, 395 F.2d 861 (2d Cir. 1968); Reading Radio, Inc. v. United States, 299 F.Supp. 616 (D.C. N.H.1969). The district director's allocation, moreover, is "presumptively correct." F. & D. Rentals, Inc. v. Commissioner of Internal Revenue, 365 F.2d 34, 41 (7th Cir. 1966), cert. denied 385 U.S. 1004, 87 S.Ct. 707, 17 L.Ed.2d 543 (1967). While the question is a close one, I believe that the plaintiff has proved that the cost assigned to the accounts receivable was reasonable and that an examination of the substance of the contract of sale must result in a determination that the plaintiff's basis in the accounts receivable was equivalent to the book value of the accounts receivable at the time of sale.

I am not impressed with the defendant's basic contention that the contract of sale failed to assign a cost to the accounts receivable. Paragraph 4 A of the contract states that "the purchase price shall be equal to the book value"; notwithstanding the defendant's assertion in its brief that "it would be most difficult to assign a figure which would reflect the 'book value' understood by the parties" at the time of sale, I am of the opinion that the contract sufficiently sets forth a formula by which the cost attributable to the accounts receivable is determinable.

■ In attempting to determine whether the contract assigned a specific cost to the accounts receivable, this court must look "through . . . [the parties'] . . . agreement to discover its substance." F. & D. Rentals, Inc. v. Commissioner of Internal Revenue, supra, at 40. Furthermore, the defendant agrees that "the fair market value of the accounts receivable bore a reasonable proximity to their book value."

In Wilson Athletic Goods Mfg. Co., Inc. v. Commissioner of Internal Revenue, 222 F.2d 355, 357 (7th Cir. 1955), the court stated:

"The tax court seemed to think that, in order to justify treating the covenant [not to compete] as an intangible capital asset, the contract must have provided an express segregation of the $132,000 from the total purchase price as the value of the covenant. But in tax matters we are not bound by the strict terms of the agreement; we must examine the circumstances to determine the actualities and may sustain or disregard the effect of a written provision or of an omission of a provision, if to do so best serves the purposes of the tax statute."

See also Commissioner of Internal Revenue v. Court Holding Co., 324 U.S. 331, 334, 65 S.Ct. 707, 89 L.Ed. 981 (1945); Particelli v. Commissioner of Internal Revenue, 212 F.2d 498, 500 (9th Cir. 1954).

In the case at bar, the contract of sale was negotiated by two teams of attorneys from the same law firm; one team represented old Maysteel, and the other

team represented the plaintiff. The defendant argues that the parties to the contract of sale were almost solely concerned with the total purchase price to be paid for the assets of old Maysteel and that the assignment of book value to the accounts receivable was essentially an afterthought and was done largely for tax purposes at the instance of the team of attorneys representing the plaintiff.

 The fact that the contract of sale was the product of the efforts of the members of the same law firm, on its face, tends to attenuate the plaintiff's argument that the contract represented "arm's-length" negotiations. However, on the basis of the evidence brought forth at the trial, I conclude that the clause of the contract which allocates a cost to the accounts receivable may not be disregarded either because the bulk of the negotiations centered upon other of the contract's provisions or because the principals involved were largely unaware of the existence of the allocation clause. In addition, the defendant concedes that the allocation was reasonable, and I am persuaded that the evidence supports such a concession.

The defendant cites the case of Victor Meat Co., Inc., 52 T.C. 929, (1969), in support of its contention that, when a specific price is not paid for accounts receivable, "the groups of assets should be treated equally." Indeed, the court in Victor Meat Co., Inc., stated, at p. 931:

"It is established . . . that when a taxpayer buys a mixed aggregate of assets for a lump sum, an allocation of the purchase price will be made to the separate items upon the relative value of each item to the value of the whole."

It is not necessary to apply the formula outlined in the *Victor Meat Co.* case to the present action for, as already stated, the evidence supports findings that the plaintiff paid a specific, determinable price for the accounts receivable and that such price was reasonable.

The plaintiff thus did not buy "a mixed aggregate of assets for a lump sum" but rather bought assets that included accounts receivable the cost of which was their book value. In my opinion, the plaintiff in the case at bar has overcome the "presumptive correctness" of the district director's allocation.

At the conclusion of the plaintiff's case, the defendant moved to dismiss; the court reserved its ruling on the defendant's motion at that time, but I now conclude that the motion must be denied. The foregoing decision shall constitute the court's findings of fact and conclusions of law pursuant to Rule 52(a), Federal Rules of Civil Procedure.

Therefore, it is ordered that the plaintiff shall have judgment against the defendant for a refund, plus interest, based upon a cost for the accounts receivable of $623,474.39.