G. Ralph Bartolme and Barbara G. Bartolme, Petitioners *v.* Commissioner of Internal Revenue, Respondent

Docket No. 1948–72.    Filed September 19, 1974.

*Robert B. Kosse*, for the petitioners.
*Stephen Zerick*, for the respondent.

Drennen, *Judge:* The Commissioner determined the following deficiencies in petitioners' Federal income tax:

| Year | Deficiency | Year | Deficiency |
|------|-----------|------|-----------|
| 1965 | $325. 29 | 1967 | $1, 818. 11 |
| 1966 | 1, 735. 37 | 1968 | 1, 953. 13 |

Petitioners were members of an investment group which purchased a one-third interest in a limited partnership in 1965. In 1964, the limited partnership prepaid 53½ months of interest on certain notes and claimed a deduction for that entire amount. In 1965, the partnership elected, pursuant to section 754, I.R.C. 1954, to adjust the basis of the partnership property in respect to the petitioners and other members of the investment group. The principal issue before us is whether petitioners may allocate a part of their purchase price to, and thus acquire an adjusted basis in, an intangible asset designated "unamortized prepaid interest," and amortize their new basis in this intangible asset over its remaining life, i.e., 37½ months.

### FINDINGS OF FACT

Certain of the facts have been stipulated and are so found. The stipulation of facts together with attached exhibits are incorporated herein by this reference.

Petitioners G. Ralph Bartolme and Barbara G. Bartolme are husband and wife residing in Arcadia, Calif. Petitioners filed their joint

Federal income tax returns for the years 1965, 1966, 1967, and 1968, with the Western Service Center, Ogden, Utah. They reported their income on the cash method of accounting.

G. Ralph Bartolme (hereinafter Bartolme or petitioner) was, during the period in issue, vice president of VSI Corp., a manufacturing company. Barbara Bartolme was a housewife during this time period.

The Simi Valley Investment Co. (hereinafter SVIC) is a limited partnership organized pursuant to the laws of California and was formed in 1964 with Property Research Corp. as the general partner. SVIC filed its U.S. partnership returns for the calendar years 1964, 1965, 1966, 1967, and 1968 on the cash basis of accounting.

According to its articles of limited partnership, SVIC was formed to acquire, own, hold for investment, improve, sell, exchange, transfer, or dispose of certain parcels of real property (hereinafter Simi land) situated in Simi Valley, Ventura County, Calif.

The Simi Valley is located approximately 50 miles northwest of Los Angeles and 30 miles east of Ventura. Prior to 1960, Simi Valley was primarily an agricultural community, but commencing around 1960, extensive and rapid residential development of the Simi Valley area began. There also occurred an explosive growth in Simi Valley's population from 1960 through 1965.

SVIC purchased on June 24, 1964, 270.37 acres of land in the Simi Valley for $1,859,000. In 1962, a freeway route had been adopted which was designed to cross the land purchased by SVIC; however, this freeway had not been completed in 1965.

Three notes secured by deeds of trust were executed by SVIC for the purchase of this 270.37 acres of land. The terms of the notes provided for prepaid interest. No payments of principal were required during the first 6 years. Pursuant to the notes' requirements, in 1964 SVIC prepaid interest on the notes in the amount of $580,000, representing prepaid interest for a period totaling 53½ months.

The entire amount of prepaid interest was deducted as an interest expense on SVIC's partnership return for the calendar year 1964. The books of SVIC treated the interest deduction as an expense item.

M. Sears & Co. (hereinafter Sears), a limited partnership, owned a 33⅓-percent interest in SVIC from the time of SVIC's organization until the sale by Sears of this interest in October 1965. On its partnership return for 1964, Sears deducted its distributive share of a loss from SVIC. Actually, the major portion of Sears' share of the SVIC loss resulted from its distributive share of the SVIC interest expense of $580,000.

On or about September 16, 1965, Property Research Corp., the general partner of SVIC, communicated by letter to Sears an offer Property Research had received from Southwest Investment Co. to

purchase Sears' 33⅓-percent interest in SVIC. Property Research's letter to Sears stated in pertinent part:

This offer results in a net price ($9400 per acre) to M. Sears Company in excess of our original projection. The original investment analysis forecast a gross price of $9000 per acre by July of 1967. Exclusive of any tax benefits you may have received through your share of the partnership deduction in 1964 ($193,-280.26), the offer to purchase your interest affords you substantial profit. We recommend you accept this offer.

On or about October 4, 1965, Sears received a letter from Southwest Investment Co. constituting Southwest's offer to purchase Sears' entire interest in SVIC. Sears accepted this offer on October 4, 1965.

On or about October 29, 1965, Southwest Investment Co. assigned its rights to acquire the 33⅓-percent interest owned by Sears in SVIC to an investor group consisting of petitioner G. Ralph Bartolme and seven others (hereinafter investor group). The investor group paid an aggregate cash consideration for their one-third interest in SVIC in the amount of $312,312, and assumed a proportionate interest in SVIC's liabilities, which amounted to $623,526. Thus, the aggregate adjusted basis to the investor group of their interest in SVIC was $935,838 on the date of transfer.

Petitioner's participation in the investor group was 9.09 percent which resulted in his acquiring a 3-percent interest in SVIC. Petitioner's cash consideration for this 3-percent interest was $28,392. Bartolme's proportionate interest in SVIC's assumed liabilities was $56,679. On the date of transfer, his adjusted basis in his interest in SVIC was $85,071.

In October 1965, at the time of the transfer, the books of SVIC reflected assets consisting of land having a book value of $1,901,804, cash in the amount of $3,819, loans receivable in the amount of $5,000, and unamortized loan fee of $600. The parties agree that for purposes of this case, at the time of the transfer, the unamortized loan fee had a fair market value equal to its book value of $600; the cash had a fair market value of $3,819; and the loan receivable had a fair market value equal to its book value of $5,000. The parties also stipulated that for purposes of allocation the fair market value of the 270.37 acres of land, at the time of the transfer, was $2,640,000.

In 1965, Sears reported capital gain on the sale of its 33⅓-percent partnership interest in SVIC to the investor group. At the time of the transfer the book value of Sears' capital account in SVIC was $7,104.47.

After this transfer by Sears of its partnership interest in SVIC to the investor group, the SVIC partnership filed an election for treatment under section 754, I.R.C. 1954, for the years 1965, 1966, 1967, and 1968, thereby electing to adjust the basis of the transferee partners in the partnership properties.

When the SVIC partnership filed the election pursuant to section 754, it claimed to have two partnership assets to which an adjustment in the basis of partnership property could be allocated. These alleged assets were: Land in Simi Valley and an item which was designated "unamortized prepaid interest." At the time of transfer of Sears' partnership interest to the investor group, SVIC determined that if the principal amount due on the notes issued to acquire the Simi Valley land were prepaid, then approximately $406,493 in prepaid interest would be recovered since 37½ months of the original 53½-month prepayment period had not expired.

SVIC determined that the amount to be added as an adjustment to the investor group's basis in partnership property was $305,207.53.[1] On its partnership return for 1965, SVIC allocated this amount as adjustments in the basis of the members of the investor group in the eligible partnership properties as follows:

| Investor group partner | Purchased interest cost | Land | Purchasing partner's capital |
|---|---|---|---|
| Raymond L. Kautz | $12,193.58 | $15,552.62 | $27,746.20 |
| G. Ralph Bartolme | 12,193.58 | 15,552.62 | 27,746.20 |
| William W. Shannon as trustee under the Jeffrey S. Shannon Trust | 12,193.58 | 15,552.62 | 27,746.20 |
| Robert I. Franks Co | 12,193.58 | 15,552.62 | 27,746.20 |
| Robert S. Cecil | 20,336.05 | 25,906.91 | 46,242.96 |
| Allen Investment Co | 32,516.21 | 41,473.68 | 73,989.89 |
| Hollywood Investment Co | 16,258.11 | 20,736.83 | 36,994.94 |
| George F. Kneller | 16,258.11 | 20,736.83 | 36,994.94 |
| | 134,142.80 | 171,064.73 | 305,207.53 |

On his individual returns for the taxable years in issue, petitioner Bartolme attached the following statement showing the election of section 754 and the purportedly proper allocation of the adjustment in the bases of certain partnership assets in respect to Bartolme:

### G. RALPH AND BARBARA G. BARTOLME

#### INCOME TAX RETURN CALENDAR YEAR 1965

Computation of Special Basis Adjustment in Compliance with Regulation 1.743–1(b)(3)

On October 29, 1965, taxpayers acquired a 3% partnership interest from M. Sears Co. in the Simi Valley Investment Company, 1333 Westwood Boulevard,

---

[1] In arriving at this figure, SVIC apparently determined that the investor group's basis in the one-third partnership interest it acquired from Sears was the aggregate of the cash it paid, $312,312, and its proportionate share of SVIC's liabilities assumed, $623,526, or a total of $935,838. Its share of the adjusted basis of partnership property is its share of partnership capital from Sears, $7,104.47, plus its share of partnership liabilities, $623,526, totaling $630,630.47. The difference between $935,838 and $630,630.47 or $305,207.53 constitutes the aggregate amount to be added to the investor group's basis in the partnership property.

Los Angeles, California, for a total consideration of $28,392.00. The Simi Valley Investment Company partnership elected under the provisions of Section 754 of the Internal Revenue Code of 1954, and the applicable California provisions, to adjust taxpayers share of the basis of partnership assets for the amounts paid for the Sears Co. partnership share in excess of its basis therein on October 29, 1965, as follows:

*Computation of excess amount paid over basis*

| | |
|---|---|
| Total paid for 3% partnership interest | $28,392.00 |
| Amount allocated to partnership capital per books (basis on Oct. 29, 1965) | 645.80 |
| Excess amount paid for partnership interest | 27,746.20 |

*Allocation of excess amount paid and calculation of special basis adjustment in purchased prepaid interest and related amortization*

| | |
|---|---|
| Land | 15,552.62 |
| Prepaid interest | 12,193.58 |
| Total | 27,746.20 |

| Period of prepaid interest | Annual amortization at Dec. 31 | Purchased prepaid interest balance |
|---|---|---|
| Oct. 29, 1965 | | $12,193.58 |
| Oct. 30, 1965, to Dec. 31, 1965 | $650.58 | 11,543.00 |
| Jan. 1, 1966, to Dec. 31, 1966 | 3,903.51 | 7,639.49 |
| Jan. 1, 1967, to Dec. 31, 1967 | 3,903.51 | 3,735.98 |
| Jan. 1, 1968, to Dec. 31, 1968 | 3,735.98 | 0 |
| | 12,193.58 | |

Petitioner concluded that since his elective basis in the alleged prepaid interest asset equaled $12,193.58 and since it constituted a depreciable intangible asset, he could amortize it over its fixed remaining life of 37½ months. Consequently, Bartolme deducted the following amounts on his income tax returns for the following years as amortization of his share of the "unamortized prepaid interest" asset:

| Year | Amount | Year | Amount |
|---|---|---|---|
| 1965 | $650.58 | 1967 | $3,903.51 |
| 1966 | 3,903.51 | 1968 | 3,735.98 |

Respondent audited the individual returns of the limited partners in M. Sears & Co. and the limited partners in the investor group. Respondent disallowed capital gain treatment by the limited partners on the gain on the sale of the 33⅓-percent interest in SVIC sold to the investor group. Respondent also disallowed the deduction by the limited partners in the investor group including petitioner of the "unamortized prepaid interest."

Statutory notices of deficiency were issued by respondent to both the limited partners of M. Sears & Co. and to the investor group. Petitions were filed with this Court by the limited partners of M. Sears & Co.

and the investor group. After consideration of this issue, the cases against the limited partners of M. Sears & Co. were closed in this Court by filing stipulated decisions, reflecting no deficiencies in income tax due from or refunds due to the limited partners of M. Sears & Co. for the taxable year in issue.

OPINION

Petitioner purchased a 3-percent interest in a limited partnership (herein referred to as SVIC), in October of 1965. At the time of the transfer the limited partnership reflected on its books the following assets and liabilities: [2]

| Assets | Book value | Liabilities and capital | Book value |
|---|---|---|---|
| Cash | $3,819 | | |
| Loans receivable | 5,000 | Mortgage, notes, and bonds | $1,889,473 |
| Unamortized loan fee | 600 | Partner's capital accounts | 21,750 |
| Land | 1,901,804 | | |
| | | Total | 1,911,223 |
| Total | 1,911,223 | | |

The parties stipulated that for purposes of allocation in this case the fair market value of the above assets as of the time of transfer was as follows:

| | |
|---|---|
| Cash | $3,819 |
| Loans receivable | 5,000 |
| Unamortized loan fee | 600 |
| Land | 2,640,000 |
| Total | 2,649,419 |

In 1964 when the partnership purchased the land, it paid $580,000 to its mortgagee as a prepayment of interest for a period of 53½ months on the principal of the mortgage notes which totaled $1,870,578. On its partnership return of income for the year 1964, the partnership claimed the entire amount of prepaid interest as a deduction for interest, and the seller of petitioner's partnership interest claimed its proportionate share of the loss occasioned by the deduction as an ordinary loss on its 1964 tax return.

Petitioner assumed his pro rata share of the partnership liabilities ($56,679) and paid $28,392 in cash for his 3-percent partnership inter-

[2] The record does not make clear the exact amount of book values on the date of transfer, because the excerpts from the partnership books that are in evidence reflect only the beginning and ending balances for the year 1965, and the transfer took place on Oct. 29, 1965. These figures are taken from the partnership return for 1965. If any of the figures used herein are incorrect, the discrepancies can be corrected in the Rule 155 computations. Also the stipulation as to the fair market value of the land was "for purposes of allocation only." However, the stipulation value is in accord with the appraised value found by respondent's expert, which is the only evidence of value contained in the record, so we will use that value for purposes of this opinion.

est, giving him a basis in his partnership interest of $85,071.[3] The $28,392 cash paid was considerably more than the book value of the capital account of the partnership interest he acquired ($645.80) and also exceeded a 3-percent interest in the excess of the stipulated fair market values of the partnership assets shown on its books over its liabilities ($22,146).

On its partnership return for 1965 the partnership elected, pursuant to section 754, I.R.C. 1954,[4] to increase the adjusted basis of the petitioner's basis in the partnership properties by the excess of his basis in his partnership interest over his proportionate share of the adjusted basis of the partnership properties, as provided in section 743(b). On the return SVIC reported that pursuant to the election, and as required by section 755 and the regulations thereunder, the basis of petitioner's interest in the partnership assets had been adjusted as follows:

| | |
|---|---|
| Purchased interest cost | $12, 193. 58 |
| Land | 15, 552. 62 |
| Purchasing partner's capital | 27, 746. 20 |

This purported to be an allocation of the excess of petitioner's cost of his partnership interest over his pro rata share of the adjusted basis of the partnership properties among the assets eligible for such proration under section 755(b), in accord with the provisions of section 755(a). Included in such assets was the item "purchased interest" which did not appear as a partnership asset on its books because the partnership had deducted the full amount of the prepaid interest on its return for 1964 instead of capitalizing it.

The issue for decision is whether the partnership was correct in allocating a part of petitioner's cost to an asset purported to be "prepaid interest," and, if so, whether petitioner may amortize the amount so allocated over the remaining life of the asset, or 37½ months (53½ months less the 16 months that had expired since the interest was prepaid).

Under section 743(a) the basis of partnership property is not adjusted as the result of a transfer of an interest in the partnership by sale or exchange. However, an exception to this rule is provided when the election provided in section 754 (relating to optional adjustment to basis of partnership property) is in effect with respect to such partnership.

Basically, section 754 provides that if a partnership files an election

---

[3] Again, there are some discrepancies in the stipulated figures and the figures that can be gleaned from the exhibits, which we cannot reconcile.

[4] All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

following the dictates of the regulations prescribed by the Secretary, then "the basis of partnership property shall be adjusted, * * * in the case of a transfer of a partnership interest, in the manner provided in section 743." The parties have stipulated that the written statement of election filed by SVIC met the timeliness requirements set forth in section 1.754–1, Income Tax Regs.

Section 743(b) provides in pertinent part:

> In the case of a transfer of an interest in a partnership by sale or exchange * * *, a partnership with respect to which the election provided in section 754 is in effect shall—
>> (1) increase the adjusted basis of the partnership property by the excess of the basis to the transferee partner of his interest in the partnership over his proportionate share of the adjusted basis of the partnership property, * * *

Such adjustment to the basis of partnership property applies only to the transferee partner. SVIC calculated that the sum of $27,746.20 constituted the amount by which petitioner's basis in the partnership property should be increased under the requirements of this section and the Treasury regulations.

Section 743(b) is only concerned with the establishment of the total amount of the adjustment to basis of partnership property. Section 743 (c) states that the allocation of the adjustment in basis among the various partnership properties is to be made in accordance with the rules contained in section 755.

Section 755 creates a rule of primary application and a rule of secondary application in allocating the adjustment to basis to specific items of partnership property. See Willis, Partnership Taxation 288 (1971). Section 1.755–1(a)(1)(i), Income Tax Regs., provides:

> The amount of the increase or decrease * * * in the adjusted basis of the partnership property shall first be divided, under paragraph (b) of this section, between the two classes of property described in section 755(b). Then, the portion of the increase or decrease allocated to each class shall be further allocated to the bases of the properties within the class in a manner which will reduce the difference between the fair market value and the adjusted basis of partnership properties. * * *

As the first step in allocating the adjustment in basis to individual items of partnership property, section 755(b) specifies that in applying the allocation rules provided in section 755(a), adjustments in basis arising from a transfer of an interest attributable to property consisting of:

> (1) capital assets and property described in section 1231(b), or
> (2) any other property of the partnership,

shall be allocated to partnership property of a like character. Once the amount allocated to each of the two classes of property described in section 755(b) is established, then the amount so allocated to each class

is further allocated under the rules of section 755(a)(1). Secs. 1.755-1 (a)(1) and 1.755-1(b)(2), Income Tax Regs. Section 755(a)(1) provides, in general, that the amount allocated to each specific class is then allocated to the bases of the properties within the class "in a manner which has the effect of reducing the difference between the fair market value and the adjusted basis of partnership properties."

Section 1.755-1(a)(ii), Income Tax Regs., provides:

> If there is an increase in basis to be allocated to partnership assets, such increase must be allocated only to assets whose values exceed their bases and in proportion to the difference between the value and basis of each. No increase shall be made to the basis of any asset the adjusted basis of which equals or exceeds its fair market value.

The reason for the exception to the general rule with respect to the adjustment of basis of partnership property upon the sale of a partnership interest is clear. If a partnership holds property that has appreciated in value, a buyer of an interest in the partnership will pay more for the interest than its proportionate share of the adjusted basis of the partnership properties because the buyer is acquiring an interest in the market value of those properties. But if the properties are then sold at market value, and there is no adjustment in the buying partner's basis in the assets sold, the buying partner will receive taxable income in excess of the difference between what he actually paid for the property and his share of the sale price. It was to avoid this inequity that these sections of the Code were enacted. While the statute speaks of adjusting the basis of the partnership properties, it refers only to the transferee's basis in the partnership property. The election has no effect on the adjusted basis of the remaining partners in the partnership properties. And the adjustment is to be made by allocating the excess paid by the buying partner among the eligible assets that have appreciated in value over book value so that the acquiring partner's basis will be brought more into line with the fair market value of those assets for which he presumably paid the excess purchase price.

With this objective in mind we must first decide whether any part of the excess amount petitioner paid for his partnership interest over the adjusted basis of that partnership interest may be allocated to prepaid interest which did not appear as an asset on the partnership books.

There can be little question that as a practical matter the unearned portion of the prepaid interest had value at the time of the transfer. Had the mortgage debt been liquidated the next day the partnership would have been entitled to a refund of the unearned portion of the prepaid interest, which amounted to about $406,000. This cash would have become a partnership property or asset regardless of how it would be treated for income tax purposes. But the prepaid interest

did not appear on the partnership books as an asset because the partnership had deducted the amount paid as interest. Respondent claims that the latter fact prevents it from being considered an asset for allocation purposes—particularly if it is a depreciable asset because that would result in a double deduction for the same payment. We do not agree.

The fact that the partnership deducted the prepaid interest, as it was entitled to do under I.T. 3740, 1945 C.B. 109, which was then effective,[5] prevented it from being treated as an amortizable capital expenditure on the part of the partnership for tax purposes, see *United States* v. *Cornish*, 348 F. 2d 175 (C.A. 9, 1965), does not mean that it was not an asset owned by the partnership; it was simply an asset with no tax basis.[6] The same would be true with respect to fully depreciated tangible assets that still had a market value. There could be no argument that a part of the excess paid by a buyer for an interest in the fully depreciated assets should not be allocated to those assets simply because their cost had been fully deducted by the partnership; yet, it could be argued, as here, that to permit such an allocation would be to allow the same cost to be deducted twice.

Another example of an allocation being permitted to an asset that frequently would not appear on partnership books is goodwill. Section 1.755–1(a)(iv), Income Tax Regs., requires that "a portion of such adjustment be allocated to partnership good will, to the extent that good will exists and is reflected in the * * * price at which the partnership interest is sold * * *, in accordance with the difference between such value of the good will and its adjusted basis at the time of the transaction."

So, we conclude that the fact that an asset does not appear on the partnership books, either because the cost thereof was expensed or it had no direct cost, does not prevent the allocation of a part of the excess price paid by the buyer of the partnership interest to that asset under section 743(b). Section 743(b) is for the benefit of the buyer of a partnership interest at a price in excess of the adjusted basis attributable to that interest in the partnership properties on the partnership books. If there was actual value in such an asset and the buyer took such value into consideration in determining the price he would pay for the partnership interest, we see no reason that an allocation of a part of the purchase price should not be made for the benefit of such buyer. This would not result in an injustice to the Federal fisc because this enables the buyer to recover tax-free only the excess amount he paid for the interest. If the buyer subse-

---

[5] See Rev. Rul. 68–643, revoking I.T. 3740 ; *Andrew A. Sandor*, 62 T.C. 469 (1974).

[6] But see *Spitalny* v. *United States*, 430 F. 2d 195 (C.A. 9, 1970). In that case, however, the expensed item was sold in the same year and its cost recovered by the same taxpayer.

quently depreciates or amortizes the excess amount he paid for a fully depreciated or expensed asset, he is not taking a second deduction of the cost paid by the partnership but is merely depreciating or amortizing his own additional cost in that asset.

The tax advantage gained in this transaction was that the seller of the partnership interest was able to deduct against ordinary income the amount it paid as prepaid interest and report as capital gain the amount it received in the transfer for its interest therein. Respondent must have realized this when he determined a deficiency against the seller, but apparently concluded that there was nothing in the law to prevent the seller from realizing this advantage, because he settled with the seller for no deficiency.[7]

We are convinced by the evidence and the facts that petitioner and his group of investors actually paid a part of their purchase price for an interest in the prepaid interest item. Petitioner testified that he was aware that the prospect of recovering a part of the prepaid interest existed, that he was conscious of the tax implications, and that he took this into consideration in deciding what he would pay for the partnership interest. His accountant verified this. Furthermore, if we give any credence to the stipulated fair market values of all the assets that were listed on the partnership balance sheet, we see no reason why petitioner and his group would have paid more than their pro rata share of that value for their partnership interests unless they were paying for something that was not reflected on the books. There was no evidence that there were any other unrecorded and unrevealed properties of the partnership that might have attracted the excess purchase price, so we conclude it was the prepaid interest item.

Respondent relies on *Anover Realty Corp.*, 33 T.C. 671 (1960), in which we held that a subsequent transferee of mortgaged property taken subject to a mortgage could not deduct the previously unamortized mortgage discount. That case is not controlling. Our decision was based on the principle that the right to amortize the debt deduction did not pass to petitioner who had not paid it. Here, petitioner has paid for an interest in the prepaid interest and is seeking to amortize *his* cost thereof.

Our conclusion finds support in *Crosley Corporation* v. *United States*, 229 F. 2d 376 (C.A. 6, 1956), wherein the court allowed the taxpayer to amortize the cost of toolings over the life of the toolings, even though petitioner had erroneously deducted the full cost as an expense in a prior year. Also, in *United States* v. *Cornish, supra*, which is the only case we have been able to find dealing directly with the **allocation**

---

[7] But see *Spitalny* v. *United States, supra*.

required under section 743(b), the court recognized the requirement of allocating a part of the purchase price to "going concern" which was an unrecorded, though also a nonamortizable, asset. In that case the Court of Appeals, interestingly enough, upon concluding that the amount paid was in excess of the fair market value of the assets eligible for allocation under section 743(b) and section 755, classified the excess as "over-evaluation" and allocated it among the eligible assets in the prescribed manner. We would have the same problem here if we did not recognize the prepaid interest as an asset eligible for allocation; but we do not have it when we recognize the prepaid interest as an asset with some value.

While we agree with petitioner in theory, we do not agree with his allocation. As we understand section 755(b) and the regulations thereunder, an increase in the adjusted basis of partnership property arising from a transfer of an interest attributable to (1) capital assets and property described in section 1231(b), or (2) any other property of the partnership, shall first be allocated between those two classes of property, and then further allocated to the eligible assets in each class. Here, for reasons we will not take the time to explain, the prepaid interest would be considered a section 1231(b) property, and thus a property described in section 755(b)(1), and the land would fall within the section 755(b)(2) class. These being the only eligible assets, the allocation need be made only as between the two classes, with no further breakdown within the classes.

The amount to be allocated here, so far as petitioner is concerned, is $27,746. The formula to be used in making the allocation, as indicated by the examples in regulation 1.755-1(c), is to prorate the amount to be allocated on the basis of the difference in partnership adjusted basis and fair market value of the assets in one class, and the difference in partnership adjusted basis and fair market value of the assets in the other class. Thus establishment of the partnership adjusted basis and the fair market value of both of the eligible assets is essential.

We know that the difference between the partnership's adjusted basis in, and the fair market value of, the land was $738,196. We also know that the partnership's adjusted basis in the prepaid interest was zero; but we must determine, as best we can from the evidence presented, what the fair market value of the prepaid interest was. While we have some doubt that the fair market value of the prepaid interest was the entire amount of the unearned portion thereof, or about $406,000, the only evidence we have points to such a conclusion. If the mortgage notes were paid off the day after the transfer, the partnership could have recovered that amount. Petitioner testified that he took this into consideration in deciding what he would pay for his interest

in the partnership. And an employee of the general partnership, in advising petitioner what his interest would be worth, used this approach. We, therefore, conclude that the fair market value of the prepaid interest was $406,000. See *Victor Meat Co.*, 52 T.C. 929 (1969). Thus, the difference between the partnership basis in this asset and the fair market value thereof was also $406,000. Applying the formula mentioned above, 406,000/1,144,196 or 35.5 percent of the $27,746 is to be allocated to prepaid interest, and 738,196/1,144,196, or 64.5 percent of the $27,746 is to be allocated to the land. Thus the amount to be added to petitioner's adjusted basis in the prepaid interest is $9,849.99, with $17,896.30 being allocated to his basis in the land, and we so conclude.

Petitioner apparently allocated 3 percent of the $406,000 to petitioner's adjusted basis in the prepaid interest, and allocated the balance of the $27,746 to the land. In effect, petitioner interpreted section 755 (b) as allowing him first to allocate the excess purchase price to section 755(b)(1) assets to the full extent of his interest in the fair market value of those assets, with any balance being allocated to the section 755(b)(2) assets. We think this is an erroneous application of the law and regulations. We interpret section 755(b) and the regulations as requiring that the excess payment be allocated proportionately between the 755(b)(1) and 755(b)(2) assets, which we have attempted to do.

Respondent also argues that even if an adjusted basis is found for petitioner's interest in the prepaid interest, he is still not entitled to amortize it because there is no provision in the Code for amortizing "prepaid interest." We cannot accept this argument. Respondent's regulation 1.167(a)-3 provides that if an intangible asset is known from experience or other factors to be of use in the business or in the production of income for only a limited period, the length of which can be estimated with reasonable accuracy, such an intangible asset may be the subject of a depreciation allowance. We find that petitioner's interest in the prepaid interest is such an asset with a remaining life of 37½ months. We think this conclusion is also consistent with the rationale of Rev. Rul. 68-643, 1968-2 C.B. 76, and our conclusion in *Andrew A. Sandor*, 62 T.C. 469 (1974). See also an article by Michael Asimow, "Principle and Prepaid Interest," 16 U.C.L.A. L. Rev. 36 (1968).

*Decision will be entered under Rule 155.*